UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY

2026 SEP -4 A 10: 46

26-10360

Marie Jean-François

*(In the space above enter the full name(s) of the plaintiff(s).)*

- against -

Marlene Caride
Zanyia Lewis
Robert Palentchar
Robert Johnson
Keith Romanowski
Marshall Dennehey
Walter Kowalec
David Blake
Jennifer Digona
Robert Dodd
Farmers Insurance

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

**COMPLAINT**

Jury Trial: ☑ Yes ☐ No

(check one)

**I. Parties in this complaint:**

A. List your name, address and telephone number. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff

| | |
|---|---|
| Name | Marie Jean-François |
| Street Address | 41 Fritz street |
| County, City | Essex County Bloomfield |
| State & Zip Code | New Jersey 07003 |
| Telephone Number | 973-338-0094 |

B. List all defendants. You should state the full name of the defendants, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant can be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1
Name: see additional pages
Street Address: ____
County, City: ____
State & Zip Code: ____

Defendant No. 2
Name: ____
Street Address: ____
County, City: ____
State & Zip Code: ____

Defendant No. 3
Name: ____
Street Address: ____
County, City: ____
State & Zip Code: ____

Defendant No. 4
Name: ____
Street Address: ____
County, City: ____
State & Zip Code: ____

**II. Basis for Jurisdiction:**

Federal courts are courts of limited jurisdiction. There are four types of cases that can be heard in federal court: 1) Federal Question - Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case; 2) Diversity of Citizenship - Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case; 3) U.S. Government Plaintiff; and 4) U.S. Government Defendant.

A. What is the basis for federal court jurisdiction? *(check all that apply)*

- [x] Federal Questions
- [ ] Diversity of Citizenship
- [ ] U.S. Government Plaintiff
- [ ] U.S. Government Defendant

B. If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? see additional pages

C. If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship see additional pages

Defendant(s) state(s) of citizenship ______________________

**III. Statement of Claim:**

State as briefly as possible the facts of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A. Where did the events giving rise to your claim(s) occur? see additional pages

B. What date and approximate time did the events giving rise to your claim(s) occur? ______________________

What happened to you?

C. Facts: see additional pages

Who did what?

Was anyone else involved?

Who else saw what happened?

**IV. Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. see additional pages

**V. Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation.

see additional pages

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 3 day of September, 2026.

Signature of Plaintiff Marie Jean-François
Mailing Address 41 Fritz street
Bloomfield, New Jersey
07003
Telephone Number 973.338.0094
Fax Number *(if you have one)*
E-mail Address jeremie1967@yahoo.com

Note: All plaintiffs named in the caption of the complaint must date and sign the complaint.

Signature of Plaintiff: Marie Jean-François

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Marie Jean-François

*(In the space above enter the full name(s) of the plaintiff(s).)*

- against -

Marlene Caride
Zanyia Lewis
Robert Palentchar
Robert Johnson
Keith Romanowski
Marshall Dennehey
Walter Kowalec
David Blake
Jennifer Digona
Robert Dodd
Farmers Insurance

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

**COMPLAINT**

Jury Trial: ☑ Yes ☐ No

(check one)

I. **Parties in this complaint:**

A. List your name, address and telephone number. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff

| | |
|---|---|
| Name | Marie Jean-François |
| Street Address | 41 Fritz street |
| County, City | Essex County Bloomfield |
| State & Zip Code | New Jersey 07003 |
| Telephone Number | 973-338-0024 |

B. List all defendants. You should state the full name of the defendants, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant can be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1
Name see additional pages
Street Address ______
County, City ______
State & Zip Code ______

Defendant No. 2
Name ______
Street Address ______
County, City ______
State & Zip Code ______

Defendant No. 3
Name ______
Street Address ______
County, City ______
State & Zip Code ______

Defendant No. 4
Name ______
Street Address ______
County, City ______
State & Zip Code ______

**II. Basis for Jurisdiction:**

Federal courts are courts of limited jurisdiction. There are four types of cases that can be heard in federal court: 1) Federal Question - Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case; 2) Diversity of Citizenship - Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case; 3) U.S. Government Plaintiff; and 4) U.S. Government Defendant.

A. What is the basis for federal court jurisdiction? *(check all that apply)*

- [x] Federal Questions
- [ ] Diversity of Citizenship
- [ ] U.S. Government Plaintiff
- [ ] U.S. Government Defendant

B. If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? see additional pages

C. If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship see additional pages

Defendant(s) state(s) of citizenship

**III. Statement of Claim:**

State as briefly as possible the facts of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A. Where did the events giving rise to your claim(s) occur? see additional pages

B. What date and approximate time did the events giving rise to your claim(s) occur?

What happened to you?

C. Facts: see additional pages

Who did what?

Was anyone else involved?

Who else saw what happened?

**IV. Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. see additional pages

**V. Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation.

see additional pages

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 3 day of September, 20 26.

Signature of Plaintiff Marie Jean-François

Mailing Address 41 Fritz street
Bloomfield, New Jersey
07003

Telephone Number 973. 338. 0094

Fax Number *(if you have one)* ____________

E-mail Address jeremie 1967 @ yahoo. com

Note: All plaintiffs named in the caption of the complaint must date and sign the complaint.

Signature of Plaintiff: Marie Jean-François

**STATEMENT OF THE MOTION AND INTRODUCTION FOR AMENDMENT**

Your Honor, I, Marie Jean-Francois, respectfully ask you please not to look at the massive size of my file or the grueling length of the letters addressed directly to you, but rather look straight at the systemic injustice, the total lack of public transparency, the absence of accountability, and the absolute bad faith executed by every single named defendant from the very top to the bottom of this multi-year conspiracy. I deeply regret that I am forced to write the structural merits, the plausible standards, and the prima facie facts of this story at such great length, but your Honor must please keep in mind that you are reviewing six long years of continuous trauma, malicious pain, and deep psychological suffering inflicted upon a self-represented, pro se lady who have done everything within my human power to resolve this property transaction amicably since August 4, 2020. It takes me endless, grueling hours to single-handedly script and write these massive legal papers because I am currently managing severe arthritis in my hands that violently locks up multiple times daily, causing me to lose sleep, survive without food, endure swelling in my feet, and face constant clinical anxiety associated with these files. The more these corporate defendants lie, and the more bad-faith motions their defense lawyers write to extract billable money for their firm, the more I am forced

to answer completely alone to defend my home, my family, and my life. Even the individual investigators of the New Jersey Department of Banking and Insurance (NJDOBI) actively took advantage of my unrepresented pro se status; they hold absolute, subjective knowledge that I am telling the unvarnished truth, yet they refused to help me and chose instead to operate as a partial protective umbrella shield to insulate a multi-billion dollar carrier from code enforcement. The defense lawyers hold absolute knowledge that my case possesses clear, devastating merits, yet they did everything within their legal power to weaponize the court rules and use deceptive timelines solely to prolong my physical and emotional trauma.

I respectfully submit this Amended Civil Rights Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(A) to formally record a profound, ongoing pattern of bad-faith record spoliation, inter-agency wire fraud, and severe statutory privacy violations that have escalated this controversy far beyond a baseline property damage dispute. I am an unrepresented, pro se minority lady, educated, well-mannered, outspoken, and IMperfect Christian lady. I explicitly put every single named defendant on direct formal notice that for the past 14 consecutive years, I have been completely unable to secure a lawyer to match their massive corporate legal teams because this highly specialized field is entirely outside of standard legal expertise, a material fact that Farmers Insurance, the state regulatory investigators, and former Farmers lawyer Lee Eckell have held explicit, subjective

knowledge of since that time. Instead of acting with professional responsibility, the defendants actively took advantage of my self-represented pro se status, utilizing it as an absolute weapon to execute an intentional disclosure blockade, suppress vital court evidence, and publicly humiliate me. They went entirely too far. When I try everything within my human power to get a fair settlement and resolve this matter amicably over 65 long, grueling months, proactively extending progressive, fair compromise lines all the way from the baseline summary valuation up to a flat settlement offer of $100,000.00 just to secure closure for my home, the corporate claims handlers callously ignored my mercy. Instead, they chose to spend massive amounts of corporate capital to hire enterprise lawyers to execute illegal ex-parte communication rings to cheat me out of my rights, while concurrently paying internal adjusters and coordinators to lie directly to state regulatory authorities. To confront this growing corruption and hold these individuals personally accountable under oath, I am legally required to amend my pleadings and drastically raise the requested compensatory, statutory, and punitive damage relief to a baseline threshold that shatters this racketeering model forever.

Your Honor, I respectfully place an absolute, binding open offer on this Court's docket at the very inception of this action, directed to every single named individual and corporate Defendant on the register. I explicitly put this Court on notice that I am serving the Defendants with copies of both my initial complaint

and this Amended Complaint to ensure complete transparency. Your Honor, please understand that I did everything within my human power, everything, to resolve this matter amicably after I first learned from Supervisor Investigator Robert Palentchar in April 2021 that Farmers Insurance had submitted system logs claiming I negotiated a verbal contract. I swallowed my pride and voluntarily offered that flat, compromised settlement of $100,008.64 to close this case, yet they preferred to inflict intentional pain. This open offer stands as an immediate test of their truth: I challenge the Defendants to produce the original, physical 14-page November 2, 2020 summary inventory list and the central telephone carrier logs, cell or landline for January 29, 2021, to document the exact time and duration of the alleged conversation. I am fully prepared to travel anywhere at my own personal expense to conduct a physical and forensic inspection of that original, unredacted signature paper. Furthermore, I demand that this Court compel the immediate production of every single internal document, email thread, and file transmission submitted to state regulators by senior TECHNICAL claims coordinator, Jennifer Digons. The unredacted public record notes confirm the exact number of file pages she smuggled behind closed doors, and there is no legal or logical way that the NJDOBI investigators could honestly accept only those two detached computer sheets as definitive proof of a finalized settlement when the text states "uff" and the underlying inventory sheet is completely back-dated to January

28, 2021, a full day prior to their manufactured timeline. When I directly confronted Robert Palentchar regarding these glaring math and timing contradictions, he unexpectedly dropped their defense, writing me that the negotiation occurred "on or about" January 29, 2021, and labeling the transaction as "perpetrated or alleged" despite holding the so-called notes. I immediately demanded to know how a state supervisor could label a transaction as "alleged" when his entire justification for denying me regulatory relief was based on the claim that Farmers possessed tangible, ironclad evidence of a finalized settlement. A transaction can only be labeled as "alleged" or "perpetrated" if there is an absolute absence of tangible evidence, or if I were the one claiming a conversation took place. In this case, the lie and the manufactured papers came entirely from them. This proves that the individual state employees colluded with the licensees, knew the records were fraudulent, and looked the other way.

Your Honor, we must go to the absolute bottom of this multi-year conspiracy for the sake of justice, accountability, and public transparency. If the Defendants can produce an authentic, un-manipulated phone log showing that supervisor Sean Drake contacted my terminal on January 29, 2021, and can prove to a mathematical certainty that my original signature is on a valid, un-forged release form, I pledge before your Honor that I will immediately dismiss all open court complaints, drop all active claims with prejudice, and pay all legal fees and willing

to face state and federal prosecutions. I shall further direct Farmers Insurance to issue the remaining cash value amount directly to a registered charity of my choice. If they cannot produce this simple phone record, they must stop wasting this Court's time, stop fabricating fake papers for discovery, and stop inflicting severe physical pain and psychiatric suffering upon me for six long years. If they fail this challenge, an ordinary New Jersey jury is fully entitled under the law to award me every single penny of the compensatory and punitive damages I am demanding, as their coordinated data blackouts, record fabrications, signature forgeries, and malicious HIPAA privacy violations are beyond outrageous, malicious, and egregious. The absolute corporate motive underlying this entire fraudulent adjustment scheme is rooted in systemic national origin discrimination, racial animus, and economic profiling. Despite the fact that Special Investigator Bobby Dodd explicitly documented in his internal reports that my family is financially independent and that my residential home is kept in immaculate, divine neatness, non-defendants Farmers supervisor Sean Drake, adjuster Vincent Policano, James Heifferon, Barbara Curtis, and former lawyer Lee Eckell operated under a deep-seated, discriminatory assumption that as a Black Haitian lady, do not deserve to receive a six-figure insurance check. They callously viewed a flat $100,008.64 payout as far too much money for a minority consumer to possess, treating it like a monumental fortune rather than a minor property replacement cost balance for a

multi-billion dollar commercial insurance conglomerate. While farmers' lawyers, Sean Drake and Walter Kawalec, boldly assert to the judiciary that no corporate employee ever used overt racial, disability, or gender slurs, and arrogantly claim that no discrimination occurred, the law recognizes that their subtle, insidious tracking rings, filing too many claims, impossible invoice mandates, and hidden claims-clutter blacklists constitute a definitive, calculated pattern of structural civil rights violations engineered specifically to target and exploit an unrepresented minority consumer. Most egregiously, to avoid an honest contract audit, the defendants deliberately crossed all lines of human decency and federal law by weaponizing my highly confidential Protected Health Information (PHI). They took my private medical information and status, which I shared with Special Investigator Bobby Dodd in strict confidence off the record on December 4, 2020, and broadcasted this private medical profile across open public registries, outside defense law firms, the NJDOBI, and courthouse networks. They executed this illegal data leakage solely to brand a qualified legally disabled homeowner as an angry, disruptive, dishonest extortionist to manipulate the state courts and force a dismissal with prejudice. To confront this growing corruption and hold these individuals personally accountable under oath, I am legally required to amend my pleadings and drastically raise the requested compensatory, statutory, and punitive damage relief to a baseline threshold that shatters this racketeering model forever.

The absolute materiality of this hidden evidence is proven by the fact that I held valid, active document subpoenas signed by the judges of the Superior Court of New Jersey since January 2024, yet the corporate carrier, the defense lawyers, and the individual employees of the NJDOBI completely ignored, trampled, and defied these judicial orders because they knew the state court would refuse to enforce subpoenas against a powerful agency. The definitive forensic proof of this multi-year cover-up has been completely unmasked across the electronic headers transmitted directly from regulatory lawyer Zaniya Lewis under the address oprarecords@dobi.nj.gov. Defendant Lewis actively saw these valid January 2024 state court subpoenas sitting inside my file, yet she chose to continue the blockade until I threatened her with a federal civil rights indictment, forcing her to completely surrender and finally transmit an incomplete, hollow package of my records after a 65-month blackout. The underlying bad faith extends straight to the executive desk of former NJDOBI Commissioner Marlene Caride, who is currently a sitting judge in the state of New Jersey. I went straight to her on April 12, 202, to report the non-feasance of her investigators, and the unredacted wire transmissions establish that Commissioner Caride possessed full, subjective written knowledge of my entire file. She knew with absolute certainty that I adamantly and continuously denied ever entering into a verbal negotiation or accepting a settlement. She personally received all my master papers regarding the claim file via electronic

mail, and she explicitly typed two personal replies back to me as a sign of gratitude. Her direct response stands as irrefutable proof that she knew exactly what was going on under her roof, yet she chose to act in absolute bad faith by deploying three separate investigators over a brief three-week period solely to generate an administrative smoke screen, deliberately turning a blind eye to corporate forgery to protect Farmers Insurance from code enforcement sanctions. The written records produced under OPRA Request #C259059 fully unmasks this back-office conspiracy, documenting the exact timestamps and page counts of their fraudulent documents. This Court must look strictly at the mathematical reality of the files hidden from my view. On Thursday, April 15, 2021, at 3:52 PM, senior TECHNICAL claims coordinator Jennifer Digons transmitted an electronic wire to Supervisor Investigator Robert Palentchar, writing: *"Please find attached our supplemental response and supporting documentation regarding Ms. Jean-Francois complaint. There are seven documents attached..."* At 4:13 PM that identical afternoon, Supervisor Investigator Robert Palentchar actively exposed their bad-faith coordination by replying: *"Thanks for the expedited response and, yes, please reissue check in the amount of $31,942.93 explaining it represents the uncontested portion of her contents claim per applicable regulations – see NJAC 11:2-17.8(h) - as it was returned by the insured."* This text entry proves that the state regulators knew with absolute clarity that the check was an uncontested

regulatory baseline, not a finalized settlement. The document tracking continued on Friday, April 23, 2021, at 5:17 PM, when Jennifer Digons transmitted another electronic wire to Palentchar, writing: *"Please find attached our response and supporting documentation... There are six documents attached with this email."* To keep this fraud hidden from my review, Jennifer Digons explicitly authored a formal letter to his desk that identical day, stating: *"The enclosed attachments include our claim file notes, which has been stamped 'CONFIDENTIAL' and we request that they not be released to anyone outside of your department."* (PLEASE NOTE DODD, FARMERS, DRAKE, AND DIGONS RELEASED MY MEDICAL INFORMATION TO NUMEROUS PEOPLE). Robert Palentchar actively colluded in this concealment. On Thursday, April 29, 2021, at 9:42 AM, Palentchar emailed Digons from his state terminal, explicitly certifying his participation in the data blockade: *"Morning Jennifer—Just to be clear so we can properly advise the insured, please provide me with a summary... and confirm if the company is also requesting confidential treatment of the unredacted (without blacked out sections), full copy (14 pages) of the November 2, 2020 Contents Claim summary spreadsheet that was initialed by the insured during the recorded statement on December 4, 2020 as she has demanded a copy; we will keep the claim notes memorializing Mr. Drake's 1/29/21 conversation with the insured negotiating a compromised settlement confidential."* On Friday, April 30, 2021, at

11:12 AM, Jennifer Digons completed the loop, transmitting an additional two documents straight to Palentchar's desk to finalize their parallel data routing. When we calculate the true forensic page logs, Jennifer Digons actively transmitted a combined total of **fifteen separate attachment documents** across those three electronic transmissions (seven attachments on April 15, six attachments on April 23, and two attachments on April 30). These hidden files explicitly included the true unredacted November 2, 2020 invoice with my original initials true copies, the recorded tape interview transcript, the completely January 28, 2021 invoice, the SIWU report, and an entirely separate, newly manufactured invoice variation generated on April 23, 2021, which was written in a completely different format than their January 29, 2021, computer text block. This reveals that there are extensive hidden records and document flows related to this alleged negotiation that the defendants and the NKDOBI are actively concealing. This is why it took Zaniya Lewis three full, agonizing weeks to send me the deficient papers in August 2026 when public transparency law mandates a strict 7-day turnaround timeline. If the statutory code establishes a 7-day limit, it is because a state agency possesses the sophisticated digital database systems to instantly retrieve, print, and send files in seven days. The defendants were not processing a routine request; they were actively searching their servers and communicating back-office to figure out what files they could get away with sending me while keeping the real notes hidden.

Furthermore, the unredacted wire text from Tuesday, April 20, 2021, at 12:42 PM hard-codes that Palentchar explicitly ordered Digons: *"please also mail a copy of the original, 14 page unredacted (policy limits and dollar amount showing on page 1 and page 12-14)* ***contents list with the insured's initials/circled items to her."*** Jennifer Digons instantly exposed their fraud by replying that the form *she had me initial* **"had the policy limits and dollar amounts obstructed from sight,"** proving they would force me to sign an illegally defaced paper.

I can easily figure out without an expert affidavit that the corporate redacted summary invoices are fakes. It is a physical and logical impossibility to have two completely different redacted versions of the exact same November 2, 2020, document when I only put my initials on it once, and the cursive initials appear in the exact same matching space on both versions. This proves the document was never redacted when I circle some of the items and initial some of the pages on December 4, 2020. The claims division manually manufactured duplicate document variations behind my back to force a property conversion. No way can these two January 29, 2021, papers, Lewis sent me, serve as proof of a negotiation when I completely deny it. The paper they produced does not even have standard page numbers printed on it when the NJDOBI received it, displaying absolutely zero structural indicators to prove it is a legal, authentic record. The Federal Court must help me through subpoenas for all the papers under discovery.

This independent federal civil rights action is completely insulated from the doctrine of res judicata or claim preclusion. It targets eleven entirely new individual defendants who were never parties to the prior state court proceedings, and while corporate Defendant Farmers Insurance is a party, it can legally be sued again under both New Jersey and federal laws. This complaint addresses entirely fresh, independent post-complaint transactional injuries, ongoing cross-agency civil rights deprivations, and severe statutory privacy violations that occurred after the initial state filings were locked. Under strict federal and state fraud standards, a massive legal and logical contradiction shatters the corporate defense registry: why would senior technical claims coordinator Jennifer Digons be the primary corporate employee dealing with my active complaint file and executing extensive back-office communications with state investigators from February 2021 to May 2021 if a legitimate verbal negotiation had truly happened with non-defendant supervisor Sean Drake? If a genuine settlement existed, Sean Drake could have simply transmitted his own system notes directly to the NJDOBI. Instead, Jennifer Digons is all over Exhibit B of lawyer David Blake's November 2023 cross-motion, proving her direct structural involvement in my active file since day one, despite the fact that she held zero personal knowledge of any negotiation and was never present during my December 4, 2020 face-to-face interview or the so-called January 29, 2021, negotiation. Therefore, defense lawyer Quinn M.

McCusker on behalf of his client, non-defendant Lee Eckell, held absolutely no legal basis to ask the court below to dismiss his client from accountability under the false pretext that his office was separate from the negotiation track. Digons heavy presence across the unredacted pages of Exhibit B unmasks Farmers' true operational motive: Jennifer Digons was specifically deployed to use her sophisticated technical knowledge and specialized computer tools to manually fabricate the back-dated text logs, redact the November 2, 2020, invoices in two entirely different ways, and orchestrate the cross-agency data blockade. This systemic bad-faith collusion is further exposed by the aggressive, synchronized pressure executed by defense lawyer Lee Eckell. For eight grueling months, Eckell relentlessly pressured me to accept the carrier's check and ordered me to add additional itemized loss listings, yet he permanently went silent and refused to answer my direct written inquiries when I ask him to state under his professional oath whether a negotiation had ever occurred. If Eckell truly believe I was legally bound by a finalized compromise settlement, a predatory shyster lawyer of his nature would never give me a free chance to expand my recovery; he would have instantly locked down the remaining $79,426.71 replacement cost value contents claim balance. Eckell has a ruthless history of dragging me into court as a defendant, having previously hauled me into the state parts in April 2014 to extort a mere dispute for $6,266.54 under Docket Number ESX-L-002325-14 or

Appellate Docket A-005455-13-T1 after I rescinded an agreement. For that minor matter, there was a signed release for a flat settlement of $25,000.00 with no summary invoice; if their current narrative were authentic, why is there no signed release or summary invoice for a contents balance of $79,426.71, which is more than three times higher? If he were willing to weaponize the courthouse over a minor $6,266.54 balance, it is a legal and physical certainty that he would have ruthlessly in January 2022, sued me over a $79,426.71 balance if their negotiation narrative were authentic. I do not include Lee Eckell as a primary defendant in my state case now sitting before the New Jersey Supreme Court based on the property loss itself; but because of his direct, ongoing participation in the bad-faith suppression of evidence and the multi-party concealment ring on the open file.

Your Honor, I explicitly implore this Court to look directly at the definitive forensic timeline of the carrier's electronic data records, which completely deconstructs their fabricated defense and proves that no verbal settlement negotiation ever took place on January 29, 2021. This is not a matter of a simple administrative disagreement; it is a documented instance of deliberate record fabrication and bad-faith concealment. Under strict forensic scrutiny, the carrier's own internal mainframe logs and back-office wire communications reveal that supervisor Sean Drake could not have contacted my terminal to discuss or dispute

my personal property documentation on January 29, 2021, because he held absolutely no investigative authority and possessed firsthand knowledge that the Special Investigation Unit (SIU) had already fully vetted, reviewed, and approved my entire inventory portfolio months prior. The absolute proof that the carrier's claims division manually manufactured duplicate case text entries behind my back falsely claiming my property list was "insufficient" to justify forcing an artificial cash ceiling onto the registry is hard-coded across the face of the unmasked email logs and verbatim electronic text files that I shall lay directly before this Bench during oral argument:

**Verbatim Compliance Record (November 12, 2020):** Special Investigator Bobby Dodd formally acknowledged my proactive cooperation, certifying via electronic mail: *"Mrs. Jean-Francois, Your prompt reply is appreciated. I will review the information that you have shared. Once I have reviewed and followed up on the information you have shared I will be in contact so that we may schedule a statement."*

**Complete Material Substantiation (November 25, 2020):** I completely fulfilled the carrier's disclosure requests, transmitting unredacted international cargo manifests, travel logs, and pictures of our secure facility tracks in Haiti, writing directly to his console: *"Pictures of the car they had stolen most of the items sent to*

*Haiti, and boxes I sent to Haiti in February 2019. Where I store the boxes in Haiti to the last destination in 2018... I hope that I have helped you in your investigation with some evidence."*

**The Special Investigation Unit's Final Approval (November 25, 2020):** Investigator Bobby Dodd officially stamped these proofs as received and verified, textually confirming his total satisfaction weeks before his porch visit: *"Mrs. Jean-Francois, I have received the photographs and documents as were requested. If you have any questions prior to our appointment at 1:00 p.m. on December 4, 2020 please let me know."*

**The Uncontested Operational Reserve Baseline (January 13, 2021):** Supervisor Sean Drake explicitly verified via electronic mail that he had not conducted any personal property evaluation or conversation with me, writing to me: *"I will be contacting you soon regarding the personal property evaluation/settlement. Thank you for your continued patience in this matter."*

**Field Claim Manager James Heifferon's Factual Admission (December 6, 2021):** Field Claim Manager James Heifferon explicitly certified for the corporate carrier that they were retroactively anchoring their defense strictly to the text of the January 29, 2021, computer entry, writing directly to my residence: *"To clarify,*

*please consider the January 29, 2021, communication from MetLife Auto & Home as an offer. This correspondence presented to you settlement figures of: $79,426.71 – Replacement Cost... $31,942.93 – Actual Cash Value."*

Your Honor, these verbatim records demonstrate a massive legal and logical contradiction that shatters the corporate defense. Sean Drake did not call my terminal on January 29, 2021, to discuss documentation because there was simply zero documentation left to discuss; he passively relied entirely on the completed SIU field report sitting on his screen and never once contacted my home. The faked negotiation notes could not have occurred "on or about" January 29, 2021, as Robert Palentchar deceptively wrote to generate an administrative smoke screen for the carrier. Jennifer Digons explicitly certified in her regulatory answers that the SIU investigator report was completely finalized and released on the morning of January 29, 2021. Sean Drake explicitly references the granular findings of that completed Dodd report across both of his internal text notes specifically logging entries at **11:42 AM** and **1:15 PM** on that identical day. This mechanical indexing proves that his faked call was tied to a hyper-specific, narrow timeframe on January 29, 2021, completely neutralizing Palentchar's bad-faith attempts to shift the timeline to a vague range to shield the carrier from a fraud audit. While Jennifer Digons and Palentchar repeatedly typed in their back-office reports that

this compromise occurred "via phone," their own faked 1:15 PM internal terminal note completely fails to mention the word "phone," and blindly asks "which insured" was bound, completely omitting the material fact that there are two separate named insureds on the policy, neither of whom ever entered into a verbal settlement. The carrier's January 28, 2021, summary claim reveals that MetLife had already been processed out the claim a day prior to January 29, 2021, proving that they had already finalized the truncated math hours before Drake claims he ever spoke with me. I am an unrepresented, pro se minority consumer who has had to sit for grueling, endless hours single-handed, managing severe arthritis in my hands to defend my family, my home and my life against a mountain of continuous corporate lies. I maintain an absolute right under the United States Constitution to force these defendants to produce every single line of evidence and full internal call histories before an independent federal jury.

Respectfully Submitted,
*Marie Jean-Francois*

Marie Jean-Francois, Pro Se Plaintiff

973/338.0094

Jeremie 1967@yahoo.com
September 02, 2026

## PAGE 1, SECTION I: PARTIES TO THIS COMPLAINT

### Box A: Plaintiff Information

- **Name**: Marie Jean-Francois
- **Address**: 41 Fritz Street, Bloomfield, New Jersey 07003
- **Phone Number**: 973-338-0094
- **Email Address**: jeremie1967@yahoo.com
- **Legal Status**: I am an unrepresented, pro se minority consumer, an educated, well-mannered, outspoken, and IMperfect Christian lady who have paid my bills on time faithfully to the State of New Jersey and all others for 42 long years. I am a legally qualified disabled retired, financially independent individual who manage my own family assets. I am currently managing a severe, long-standing invisible physical disability and a diagnosed medical illness.

### Box B: Defendant(s) Information

**Defendant 1: Marlene Caride**, in her individual capacity

*Unlawful Acts Performed and Combined Fact Track:*

Defendant Marlene Caride, acting under color of law, is civilly liable for gross administrative non-feasance, state-action collusion, and the intentional

concealment of public regulatory records. Exercising bad-faith oversight as the Commissioner of the NJDOBI, she completely ignored my formal civil rights complaints and deployed three separate investigators over a brief three-week period for the sole purpose of generating an administrative smoke screen to protect the corporate carrier from an honest statutory audit. To contain the exposure of her department's bias, she authorized an intentional data blockade, permitting her subordinates to smuggle my confidential files across unauthorized networks while she transmitted duplicitous personal email messages to my terminal on July 1, 2021, wishing me well to insulate Farmers Insurance from regulatory sanctions.

**Defendant 2: Robert Palentchar**, in his individual capacity

*Unlawful Acts Performed and Combined Fact Track:*

Defendant Robert Palentchar, acting under color of law as an Investigations Supervisor for the NJDOBI, is civilly liable for intentional common law fraud, official misconduct, and an active civil racketeering conspiracy. He assumed absolute control over my enforcement file and personally dictated what documentation would be hidden from my review, explicitly contacting me via telephone to pressure me to accept the carrier's check, and going so far as to dictate to Farmers exactly how to draft the text of the April 16, 2021, letter sent to my home. He deliberately filtered out my notice evidence, completely abandoned his statutory obligation to sanction a licensee caught utilizing fabricated document

duplicates, and actively compromised regulatory standards by asking the carrier if he was required to keep their internal papers confidential against the express mandates of public transparency law. He completed this concealment by deploying a back-office email on December 23, 2025, using ongoing litigation as a bad-faith pretext to deny me public records while mockingly wishing me a joyous holiday season to cover up his backdoor legal coordination.

**Defendant 3: Keith Romanowski**, in his individual capacity

*Unlawful Acts Performed and Combined Fact Track:*

Defendant Keith Romanowski, acting under color of law as the first Investigator for the NJDOBI, is civilly liable for civil conspiracy and bad-faith evidence suppression. He handled my initial consumer complaint with active bias, willfully accepting manipulated data from the senior technical claims coordinator. Jennifer Digons, and blindly adopting her verbal negotiation narrative without demanding a single line of physical verification or mainframe audit trail. He completely vanished by refusing to return my calls or interview me, summarily closing the regulatory enforcement case on March 8, 2021 without ever contacting me to conduct a basic fact check. After I directly initiated contact to confront him, he sent an official letter certifying what Farmers Insurance held within its database constituted their private, personal documents that I was legally blocked from

obtaining, rubber-stamping their defense by falsely asserting that the claim had been processed fairly for depreciation to close the file under a complete disclosure blackout.

**Defendant 4: Robert Johnson**, in his individual capacity

*Unlawful Acts Performed and Combined Fact Track:*

Defendant Robert Johnson, acting under color of law as the third Investigator for the Enforcement Division of the NJDOBI, is civilly liable for official misconduct, record suppression, and bad-faith record manipulation. He accepted a downgraded, bad-faith transfer of my complaint file directly from Supervisor Palentchar in May 2021 for the specific purpose of running a dilatory, five-month tracking ruse to stall my inquiries and bury the structural fraud. He and Palentchar aggressively pressured me to enter into an appraisal process while possessing absolute, subjective knowledge that Farmers, Digons, and non-defendant supervisor Sean Drake had manufactured back-dated duplicate text blocks, callously advising me to engage in an independent legal pursuit before the courts to shield licensees from open fraud investigations and refuse to compel the production of unredacted documents. Under strict New Jersey and federal fraud laws, it is a legal and logical impossibility for me to pursue an insurance appraisal after supposedly negotiating a so-called binding, finalized compromise settlement with non-defendant

supervisor Sean Drake on January 29, 2021. If such a contract actually existed, attempting to secure additional money through appraisal or double-dipping on a settled claim would constitute a serious white-collar crime for which the NJDOBI and Farmers Insurance could openly prosecute me. I adamantly deny that any negotiation ever took place, I directly confronted Johnson and Palentchar, demanding that they produce the physical evidence and original notes that supervisor Sean Drake and coordinator Jennifer Digons allegedly submitted to their desks. They completely ignored my terminal and refused my requests because they have held absolute, subjective knowledge from the very beginning that the evidence is completely manufactured. I cannot legally be given the concurrent options to pursue an appraisal while being bound by a finalized settlement, yet Johnson explicitly told me to take independent legal action while the NJDOBI investigators simultaneously suppressed the records needed to prove my case. Now that I have taken legal action, both the NJDOBI and Farmers Insurance completely refuse to produce the unredacted evidence, willfully defying valid state court subpoenas because they know an open forensic audit will expose their cross-agency conspiracy on the register.

**Defendant 5: Zaniya Lewis**, in her individual capacity

*Unlawful Acts Performed and Combined Fact Track:*

Defendant Zaniya Lewis, acting under color of law as an OPRA Records Custodian and Regulatory Lawyer for the NJDOBI, is civilly liable for fraud on the court, intentional disclosure delays, and conspiracy. Intervening directly to provide bad-faith legal cover to shield Supervisor Palentchar's database records and block me from accessing the unredacted November 2, 2020, invoices, she actively saw my valid January 2024 state court subpoenas inside my file and willfully ignored them. She executed an absolute administrative blockade via oprarecords@dobi.nj.gov on Thursday, August 6, 2026, at 11:29 AM, explicitly denying my emergency requests and closing the file under a narrow regulatory code to shield the carrier from sanctions. Upon being confronted with detailed civil rights violations, she retreated on Friday, August 14, 2026, and subsequently routed a temporary, encrypted MOVEit cloud portal account on Tuesday, August 25, 2026, at 4:40 PM under Username jeremie1967@yahoo.com and Password N6tN]3Uo to execute a technological blackout, trapping unredacted files inside an unopenable portal to bait a disabled consumer into technical exhaustion. She was finally forced by my pending federal lawsuit to surrender and transmit copies of my files to me, yet she deliberately delivered a completely hollow, deficient, and incomplete document package to hide their internal fraud, leaving me still fighting to extract the unredacted history that I have aggressively tried to obtain for the past 70 months

**Defendant 6: Farmers Insurance**

*Unlawful Acts Performed and Combined Fact Track:*

Defendant Farmers Insurance is a private corporate entity liable for breach of contract, common law fraud, and federal civil racketeering under 18 U.S.C. Section 1962. Under the doctrine of respondeat superior, the corporate carrier is fully liable for manufacturing a false debris. Clutters and too many claims on August 7, 2020 policy cancellation notice threatening to terminate coverage unless the Plaintiff removed water-saturated fire debris that the carrier was contractually obligated to send Westfair Restoration to clear. The carrier weaponized a hidden claims-clutter tracking registry to blackball my name across the insurance industry clearinghouses to prevent a lawful contract recovery to deceive the courts, the NJDOBI, and hiding its own internal data.

**Defendant 7: Robert Dodd**, in his individual capacity

*Unlawful Acts Performed and Combined Fact Track:*

Defendant Robert Dodd, acting as a Special Investigation Unit Investigator and internal operations specialist, is civilly liable under 42 U.S.C. Section 1981 and 18 U.S.C. Section 1962 for intentional fraud, corporate conspiracy, and systemic mail and wire fraud. He executed an unlawful physical trespass upon my private property, crossing residential boundary lines without knowledge or consent to

clandestinely inspect my personal Lexus vehicle parked in the driveway, the exact asset dedicated for transport to Haiti for family community charity work, and never seeks my permission. During the December 4, 2020, front porch interview, he gave me an unredacted 14-page Contents Claim Summary list under false oral promises to mail a clean copy, only to go behind my back, violate his confidentiality promise, and apply a thick black marker to heavily redact the papers to hide the true calculated Actual Cash Value total of $100,008.64, and the entire November 2, 2020, cover page. He actively abused his position of trust by compiling an unauthorized psychological profile of my confidential, private medical information tracks and placing them into a permanent corporate file to brand me, while manufacturing a blatant lie in his logs claiming I refused to produce bank statements.

**Defendant 8: Jennifer Digons**, in her individual capacity

*Unlawful Acts Performed and Combined Fact Track:*

Defendant Jennifer Digons, acting as a Senior Technical Claims Coordinator, is civilly liable under 42 U.S.C. Section 1981 and 18 U.S.C. Section 1962 for fraud, civil perjury, and bad-faith claims handling. She is the undisputed internal corporate mastermind behind all fabricated external and internal fraudulent papers served on the file. Utilizing her senior corporate title, her specialized authority, and

sophisticated mainframe computer tools, she manually manufactured the false January 29, 2021 case text notes behind my back, labeling them as a confidential system log to shield them from an honest contract audit. She altered the master November 2, 2020, summary invoice in two entirely different ways, applying a thick black marker to deface the baseline numbers and render the cover pages completely useless. She falsely characterized an innocent, disabled homeowner as a criminal extortionist to the NJDOBI, claimed property investigations were actively ongoing through March 2021 when her own server metadata proves her structural evaluation report was fully finalized and sealed on April 2021, and executed the unauthorized data leakage of my confidential Protected Health Information (PHI) across public registers and third-party networks to run an institutional character assassination ring.

**Defendant 9: David Blake, Esq.**, in his individual capacity

*Unlawful Acts Performed and Combined Fact Track:*

**Defendant David Blake**, in his individual capacity, is civilly liable under 42 U.S.C. Section 1983 and 18 U.S.C. Section 1962 for civil perjury, fraud on the court, and intentional record spoliation. Operating as a private defense trial lawyer on behalf of the corporate carrier, he executed an unauthorized, parallel, extra-judicial data track to state regulators to hide an ongoing civil rights violation

and ran an active discovery blockade before the court. Blake manufactured a false narrative regarding standard depreciation calculations as a fraudulent pretext to secure a blind dismissal of the case. During the November 2023 motion track, Blake compiled a massive 487-page cross-motion document and transmitted the full 487-page version to my residence via physical mail, but surreptitiously extracted and withheld over 343 pages from the court clerk, presenting only a hollow 144-page version to the judge. He executed this dirty exhibit manipulation to permanently hide **Exhibit B**, which contained the raw, unredacted email strings between the NJDOBI investigators and MetLife/Farmers employees. In doing so, Blake completely sold out the NJDOBI co-defendants by exposing their illegal back-office coaching and state-collusion notes, even while those very same state regulators were actively running a database blackout to protect Farmers Insurance. Crucially, lawyer Blake intentionally withheld and suppressed the baseline evidence of any settlement negotiation from **Exhibit B** of his November 2023 cross-motion. He subsequently walked into the courtroom completely empty-handed, with zero physical files, and maliciously flipped the narrative by aggressively accusing me of lying on the open record about premium depreciation withholdings and policy filing timelines, intentionally deploying this smoke screen to divert the judge from the true cause of action: a six-year statute of limitations fraud claim under New Jersey law and a verbal settlement negotiation that never

happened in reality, which the lower court blindly believed. Furthermore, Blake willfully refused to fulfill his statutory obligation to serve me a clean digital copy via electronic mail to ensure I was blocked from downloading clear, legible copies for the judicial record. He completely refused to answer valid document subpoenas delivered directly from the judge's chambers and has completely failed to produce a single line of physical verification, central database logs, or telephone call records from Farmers to prove that non-defendant supervisor Sean Drake ever initiated contact with my terminal on January 29, 2021.

.**Defendant 10: Walter Kawalec, Esq.**, in his individual capacity

*Unlawful Acts Performed and Combined Fact Track:*

Defendant Walter Kawalec, operating as a private defense appellate lawyer on behalf of the corporate carrier, is civilly liable for fraud on the court, civil perjury, and an active racketeering conspiracy. He orchestrated the appellate cover-up track to intentionally paralyze my appeal, re-publishing and verifying known fabricated certified mail manifests in his court briefs, planting false narratives to poison the judicial record. To cover Blake's tracks on appeal, Kawalec executed a secondary record ruse, transmitting a copy of a motion to vacate default totaling 70 pages while explicitly writing on the legal cover sheet that it was the cross-motion to dismiss to deceive a self-represented litigant. He boldly asserted to the appellate

panel that my failure to receive the full 487-page document did not affect the outcome, deliberately keeping the judge blind. To permanently block a reversal, lawyer Kawalec filed a pre-emptive motion to dismiss with the New Jersey Supreme Court before I could formally file my petition for review, knowing that under the court routing rules, a self-represented litigant is procedurally barred from filing a regular answer, forcing the justices to review his manufactured, one-sided narrative first.

**Defendant 11: The Corporate Law Firm of Marshall Dennehey**, Jointly and Severally

*Unlawful Acts Performed and Combined Fact Track:*

Defendant The Corporate Law Firm of Marshall Dennehey is an enterprise legal entity practicing within the State of New Jersey, civilly liable as a co-conspirator and state actor under the Lugar doctrine. The firm directly integrated its legal operations with corrupt municipal and state regulatory officials to manipulate discovery, bypass court evidence rules, and execute a multi-year courtroom cover-up campaign. The firm is sued jointly and severally under the doctrine of partnership liability for the intentional civil wrongs, pre-filing document smuggling rings, and deceptive timeline fabrications executed across all motions, briefs, and

headletters served on my terminal under the signatures of its partner lawyers and the manual operations of its typing paralegals.

To demonstrate the full scope, operational breadth, and continuous track of this multi-year civil racketeering enterprise to the federal judge, I explicitly record the specific actions of these five additional non-party actors. While these individuals are not named as direct primary defendants on the face of the summons to protect my procedural routing, their coordinated participation provides the essential structural bridge linking the corporate billing fraud directly to the state regulatory cover-up:

- **Non-Party Co-Conspirator Sean Drake** (Farmers Insurance Operations Supervisor): Sued implicitly under Count II via respondeat superior, he acted as the primary corporate handler who attempted to manufacture the fraudulent compromise settlement defense out of thin air. During a highly tense, recorded phone conversation on January 11, 2021, he became hostile and aggressively accused me of calling to initiate a claim negotiation, directly contradicting the reality that I was strictly calling to demand the unredacted invoices and recorded statements that Investigator Dodd had withheld from my view. After I caught him in his lie on the recorded tape, he falsely promised in a January 13, 2021 message to contact me for a

legitimate resolution, but instead cut off communication entirely to let the carrier issue a unilateral, depreciated bulk check for actual cash value $31,942.93 on January 29, 2021.

- **Non-Party Co-Conspirator Barbara Curtis** (Claims Customer Relations Consultant): Acted as a central back-office operative working hand-in-hand with state regulators to force my capitulation. On December 3, 2021, she directly contacted me and aggressively pressured me to accept the insurance check, flatly telling me that the New Jersey Department of Banking and Insurance (NJDOBI) is not my advocate and would not help me. Crucially, during this entire conversation, she completely concealed the existence of a compromise settlement, never once mentioning that the company had manufactured a fake negotiation story. It was not until David Blake filed his cross-motion that Exhibit B exposed her true role, proving that she was actively conspiring behind the scenes with NJDOBI handlers to push the depreciated check onto me while using state administrative channels to bury the carrier's corporate liability. When Supervisor Robert Palentchar flatly refused to take regulatory action and directed me to file an internal corporate complaint directly with Farmers Insurance, the carrier placed the exact same Barbara Curtis in complete charge of investigating my complaint against her own co-conspirators. To finalize this corporate ruse, when she mailed her

formal resolution letter, she completely scrubbed the text of any mention of my actual accusations against Policano and Blake's fraud to ensure their paper trail remained hidden.

- **Non-Party Co-Conspirator James Heifferon** (Field Claim Manager): Appointed by the corporate enterprise to pretend to investigate the fraudulent actions of Sean Drake and Vincent Policano, James Heifferon is the single MetLife and Farmers employee who explicitly committed corporate wire fraud by writing a false claim summary on January 29, 2021, asserting that a binding negotiation settlement had occurred, a claim he completely failed to prove or document. Heifferon then lied to me by claiming that the reissued contents check was merely a standard offer, actively begging me to accept it during our telephone conversation on December 3, 2021. In a desperate attempt to force my capitulation, he pressured me to move quickly, stating that my time to cash the check would expire soon. I immediately exposed his administrative ignorance, informing him that the legal timeline to cash any loss payment under my policy had already expired on August 1, 2021, and our conversation was occurring months later on December 3, 2021. Heifferon then shifted his tactics and asked me to submit a fresh settlement offer; when I responded with an offer

of 75% just to secure closure for my home, he mockingly laughed at me over the telephone.

- **Non-Party Co-Conspirator Lee Eckell** (Former Private Carrier Lawyer): Sued implicitly for ongoing litigation bad faith, he acted with pure, synchronized malice, choosing to insert himself into this dispute exactly one full year after their fabricated negotiation date solely to protect the corporate cover-up. For eight grueling months, Eckell relentlessly pressured me to accept the carrier's check and ordered me to add additional itemized loss listings, yet he permanently went silent and refused to answer my direct written inquiries when I asked him to state under his professional oath whether a negotiation had ever occurred. If Eckell truly believe I was legally bound by a finalized compromise settlement, a predatory lawyer of his nature would never give a self-represented consumer a free chance to expand my recovery; he would have instantly used those notes to drag me into court and legally lock down the $79,426.71 replacement cost value contents claim balance. He has an active, ruthless history of dragging me into court as a defendant, having previously hauled me into the state parts in April 2014 to extort a mere dispute for $6,266.54 under Docket Number ESX-L-002325-14 after I rescinded an agreement within time. For that minor matter, there was a signed release for a flat so-called settlement of

$25,000.00 with no summary invoice; if their current narrative were authentic, why is there no signed release, but a summary invoice dated January 28, 2021, a day before the so-called January 19. 2021, for a contents balance of $79,426.71, which is more than three times higher? The absolute fraudulence of this negotiation narrative was blown wide open during a formal court hearing on December 15, 2023, when lawyer Eckell's own law firm representative, Quinn M. McCusker, explicitly admitted to the judge that there was merely an alleged negotiation on the record, but verified that his own client was never a part of it.

- **Non-Party Co-Conspirator Vincent Policano** (Farmers Field Claims Adjuster / Property Inspector): Executed a calculated, bad-faith property evaluation scheme to intentionally lock me into a structural trap. During his field inspection on August 4, 2020, the Westfair remediation manager explicitly directed me to throw out all personal property because everything was completely totaled by the fire, a total loss that adjuster Policano personally observed but intentionally hid from his supervisors. Policano was intimately familiar with my home, having conducted at least 4 separate, exhaustive walk-through inspections where he took extensive physical photographs inside my closets, my refrigerator, and my baseline layouts. He willfully set up an administrative ruse by instructing me to submit my

property loss list in a simplified bulk format, and immediately concealed his own instructions from his team to allow Sean Drake to attack me on January 11, 202, and Digons in her letters to Romanowski and Palentchar. Policano is the specific corporate liar who falsely told the NJDOBI that the independent software company, Enservio, had made an administrative mistake on the ledger to cover up their deliberate redactions of the November 2, 2020, summary claim, and he secretly drafted the manufactured summary invoice dated January 28, 2021, a full day before their fabricated negotiation date. To finalize this state-action collusion, Policano personally authored a formal letter to my home on April 16, 2021, explicitly stating, "as per Palentchar," wherein he textually cited the exact, scripted words that Supervisor Investigator Robert Palentchar had secretly instructed senior claims coordinator Jennifer Digons to write to me, providing the ultimate paper trail of their back-office conspiracylearned that adjuster Vincent Policano had intentionally cheated me on my property claim when I spoke with his supervisor, non-defendant Sean Drake, on January 11, 2021. After calling adjuster Policano on January 8, 2021, and finding him absent from his desk, I bypassed him to directly confront supervisor Sean Drake to demand the release of Investigator Bobby Dodd's unredacted documents and to report that adjuster Policano had completely

failed to provide an itemized statutory letter explaining exactly how my prior loss checks were calculated under New Jersey insurance law. Adjuster Policano had deliberately cheated me out of a specific structural amount for less than $3,000.00 while completely ignoring my ongoing record requests since September 2020.

- Supervisor Sean Drake immediately seized upon adjuster Policano's structural truncation to execute a calculated behavioral trap, playing smart by unilaterally issuing a massive bulk check for exactly $31,942.93 under the arrogant assumption that an unrepresented consumer would be so overwhelmed by a $31,942.93 payout that she would instantly jump, accept, and cash the funds without ever receiving her master claim records. I immediately shut down his game, explicitly informing supervisor Sean Drake on that recorded tape that I would never accept or cash any bulk check without first receiving a true, unredacted copy of the November 2, 2020 master invoices and a complete copy of my December 4, 2020 interview recording.
- The corporate claims division operated under the discriminatory assumption that my household was poor, completely ignoring Investigator Bobby Dodd's firsthand observations of my immaculate estate, believing I would cave to financial pressure. The absolute fraudulence of their timeline is hard-coded

by the fact that adjuster Policano completely excluded any mention of a verbal agreement from his official papers dated January 28, 2021, April 16, 2021, and April 23, 2021, and lawyer Lee Eckell completely excluded any such mention from his March 22, 2022 legal entrance letters. I held zero knowledge that the carrier had manufactured a fraudulent settlement alibi until Supervisor Investigator Robert Palentchar unexpectedly dropped the narrative on my terminal in April 2021..

## PAGE 2, PART II: BASIS FOR JURISDICTION

### Box A: Select the Basis for Jurisdiction

- **Selection**: Federal Question

  **Section B: Specific Federal Statutes or Constitutional Provisions at Issue**

- **42 U.S.C. Section 1981**: Constitutional protection of the equal right of all citizens to make and enforce commercial insurance contracts without discrimination based on race, national origin, or linguistic profiling; violated by senior technical claims coordinator Jennifer Digons and Investigator Robert Dodd who used my pro se status to deny my contract audit, and block my financial recovery.
- **42 U.S.C. Section 1983**: Deprivation of consumer civil rights under color of state law; establishing direct liability against individual state regulatory employees Marlene Caride, Robert Johnson, Robert Palentchar, Keith Romanowski, and Zaniya Lewis for operating in an active civil rights conspiracy alongside private corporate handlers to execute an intentional data blockade, conceal record spoliation, and deny procedural due process.
- **The First Amendment**: Constitutional protection of Free Speech and the absolute right of a citizen to petition the government for a redress of

grievances; violated via retaliatory public building access blackouts and checkpoint lockouts designed to silence my complaints against their structural fraud.

- **The Fourteenth Amendment**: Violation of the Due Process and Equal Protection Clauses; executed through selective bad-faith state-action collusion, malicious record manipulation, and public character defamation to destroy public database records, block my right to be heard, and grant two ex-parte judgement court orders on October 4, 2023, and an ex-parte amended complaint dismissal without an oral argument on March 8.2024.
- **The Health Insurance Portability and Accountability Act (HIPAA) Privacy Framework, 45 C.F.R. Parts 160 and 164**: Federal statutory privacy shields governing the protection, nondisclosure, and strict sealing of a consumer's Protected Health Information (PHI); weaponized in this action under 42 U.S.C. Section 1983 to demonstrate that the individual defendants intentionally crossed all federal boundaries by smuggling confidential health information tracks onto an open inter-agency database to execute a system-wide public character assassination.
- **The New Jersey Insurance Information and Privacy Protection Act, N.J.S.A. 17:23A-1**: State statutory privacy framework governing the absolute confidentiality of policyholder records and personal information;

utilized pursuant to 28 U.S.C. Section 1367 to establish this Court's supplemental authority over the defendants' intentional disclosure violations, unauthorized medical data leakages, and bad-faith privacy breaches.

- **18 U.S.C. Section 1962 (Federal Civil RICO Act)**: Establishing an active, multi-year fraudulent enterprise utilizing systemic mail and wire fraud to execute ex-parte data ruses, manufacture backdated insurance tracking records, alter court exhibits, and deliberately withhold public records to deceive the judiciary. This transaction was never part of the original record below, and it could not have been raised in the initial filing, which definitively establishes that this matter is a totally new case and cannot be barred by res judicata.
- **28 U.S.C. Section 1367**: Supplemental Jurisdiction over state law claims; granting this Court absolute authority over my underlying counts of Common Law Fraud and Breach of Contract against Defendant Farmers Insurance as it is part of the exact same continuous nucleus of operative facts and encompass long-standing ongoing economic injury initiated over six years ago starting August 4, 2020.

**Section 2: Statement of Venue**

Venue is perfectly proper in the United States District Court for the District of New

Jersey pursuant to 28 U.S.C. Section 1391(b). The corporate fraud, bad-faith document withholdings, data blackouts, and systematic refusal of state officials to comply with mandatory statutory record rules all occurred directly at administrative offices and desks located inside Mercer County and Essex County, New Jersey. The physical real estate and residential property lines targeted, damaged, and blacklisted by this fraudulent adjustment scheme is my private home address located at 41 Fritz Street, Bloomfield, New Jersey 07003.

**PAGE 3, PART III: STATEMENT OF CLAIM**

**SECTION A: Where Did the Events Take Place?**

- The administrative offices and database systems of the New Jersey Department of Banking and Insurance (NJDOBI) at 20 West State Street, Trenton, New Jersey; the physical real estate and residential property lines of my private home at 41 Fritz Street, Bloomfield, New Jersey; and the corporate and operations networks of Farmers Insurance in New Jersey, and Marshall Dennehey, P.C. at 15000 Midlantic Drive, Suite 200, Mount Laurel, New Jersey 08054.

**SECTION B: When Did the Events Happen?**

- Continuous from the initial Fire incident inspection on August 4, 2020, 2023 breach of contract and corporate underwriting fraud executed by Farmers Insurance Exchange through the present date.

**SECTION C: Master Chronological Facts — Who Did What, When, and Where**

1.This case arises out of events commencing on August 2, 2020, when an accidental electrical fire occurred inside the storage shed at my residence. The

responding crews of the Bloomfield Fire Department explicitly certified to me that they heavily wet and saturated every single pristine, boxed retail asset inside the structure to prevent re-combustion. On August 4, 2020, Westfair Restoration Manager Gordey arrived at my property and conducted a joint inspection in the direct presence of Adjuster Vincent Policano and Farmers private Fire Investigator Joseph Kotora. Manager Gordey explicitly issued a professional warning to me and to the corporate agents on the scene: "do not keep a single item from that shed because porous textiles and boxed retail cargo permanently absorb toxic smoke molecules and can never be washed or salvaged." The claims division held immediate, firsthand knowledge via their own contractor that my cargo was a 100% total water-soaked loss, yet deliberately chose to suppress these findings to run an unauthorized property conversion.

2. On August 19, 2020, Mercer corporate employee Deborah Syse explicitly told me via phone that the carrier's underwriting division utilizes a hidden claims-clutter tracking registry behind closed doors to blackball my name across the insurance industry under the false pretext that I had historically filed too many claims and my property contained debris and clutters to prevent a lawful contract recovery. The carrier's underwriting department weaponized this tracking registry to blackball my name. The carrier went so far as to issue an initial notice on

August 7, 2020, threatening to cancel my policy under the fraudulent demand that I physically remove fire debris from the premises, even though this was the exact water-saturated cargo that Farmers was contractually obligated to send Westfair Restoration to collect and clear from my yard. I transmitted date-stamped photographs via electronic mail that very day to expose their lies, and upon reviewing them, Mrs. Syse explicitly admitted to me on the recorded tape that I had a beautiful home. The carrier deliberately hid its own internal computer data showing that its underwriting office had already fully evaluated my prior 2012 Sandy storm loss and accepted my risk premium surcharges for more than 14 years. To execute this calculated pattern of financial discrimination, the corporate defendants deliberately chose to target an IMperfect self-represented Black Haitian lady under the false assumption that I lacked the assets to fight them. My family is not poor, and the defendants possessed direct, tangible proof of our financial standing all along. I explicitly presented official documentation from the administrator in charge of my family's ancestral assets in Haiti.

3.On December 4, 2020, Special Investigator Robert Dodd arrived at my residence to conduct a face-to-face interview. Upon his arrival, Defendant Dodd executed an unlawful physical trespass upon my private property, intentionally crossing my residential boundary lines without my knowledge or consent to clandestinely

inspect my personal Lexus vehicle parked in the driveway, the exact asset dedicated for transport to Haiti for our family's community charity work. He did not have my permission to step on my driveway and inspect the car. When he initially requested a standard telephonic interview, I flatly refused to handle such sensitive matters over the phone; I explicitly demanded that he come to my property in person so I could physically put these confidential, private asset documents directly into his hands. This transaction occurred during the height of the COVID-19 pandemic, our formal interview was executed on my front porch. To completely destroy any fraudulent claims of property debris, I deliberately opened my front door wide so Dodd could see directly into my home, exposing the absolute, immaculate neatness of my interior layout. I physically showed him my expensive personal property items and told him their exact retail purchase prices, forcing him to openly admit that my home was completely immaculate.

4.During that face-to-face meeting on December 4, 2020, Dodd presented a corporate document and commanded me to place my physical initials on pages that have charity items in a November 2, 2020, MetLife/Farmers summary invoice. He explicitly promised on an active audio recording that he would return to his office and mail a direct copy of this initial document to my residence. He completely breached that promise and applied a thick black marker to fully redact the

bottom-line numbers my eyes had witnessed, hiding the true mainframe calculated Actual Cash Value total of $100,008.64. During that interview, I explicitly ordered Dodd to turn off his audio recorder so that I could share my personal life history, deep family struggles, and private medical information in absolute confidence off the record. I explicitly instructed him that this data was statutorily protected, highly confidential, and must remain strictly between the two of us to protect my family, as broadcasting our ancestral land wealth onto an open registry exposes my relatives to severe security threats and international kidnapping rings during an active gang violence crisis in Haiti; this is the reason I do not travel to Haiti for the past 7 years. Dodd actively abused that position of trust, went directly behind my back, and placed my highly sensitive Protected Health Information (PHI) and private family profile into a permanent corporate claim file.

5.On Monday, January 4, 2021, at exactly 9:19 AM, I transmitted a direct, written confrontation to the terminal boxes of Defendant Dodd and Adjuster Vincent Policano, explicitly confirming that the inventory papers were completely unredacted when Dodd extracted my initials on December 4, 2020. I transmitted a direct, written confrontation to them stating explicitly: **"I trust your words. You are an investigator. If I lie to you or to any of Metlife's employees, I would be prosecuted. The purpose of you taking part in the claim is to seek the truth.**

**You cannot keep the document from me. You promised me that you would send it to me. It is recorded on your own tape. I need to read the document; I had a glance of it on December 4, 2020."** At exactly 10:00:36 AM, Dodd replied from his terminal box, certifying in writing: "I will place a copy of the papers that you had initialed in the mail this week." This electronic exchange provides an unassailable forensic anchor. It proves the carrier held full, written administrative notice of my unredacted totals, and that the claims division actively defaced my signature records behind my back less than an hour later because they realized they could not release the true mainframe calculations without exposing their internal property conversion. Dodd did not transmit the redacted page variant until later that afternoon. I explicitly demand the immediate production and physical inspection of the original 14-page Contents Claim Summary list dated November 2, 2020, bearing my authentic, handwritten ink initials "JM" on the center footer of the pages, rather than the altered, redacted, or duplicate copies fabricated by the corporate carrier.

6.The electronic tracking records unmasked under OPRA Request C259059 provide the definitive forensic proof that Senior Technical Claims Coordinator Jennifer Digons and non-defendant Farmers supervisor Sean Drake operated a coordinated evidence fabrication ring behind closed doors. To execute an

unauthorized property conversion and manufacture a fraudulent settlement alibi on the open file, Sean Drake typed up a raw, un-signed computer data entry that was subsequently utilized by coordinator Digons to copy and paste into the carrier's primary defense motions. This document is an absolute administrative fiction written based on a forced, unreferenced settlement loop with no physical release. It completely suppresses the material terms of my policy, failing to mention a single line regarding replacement cost values, and tracking nothing but an artificially slashed cash value to force a predatory check into my mailbox. By comparing their manufactured printout against the true mainframe calculations, the record hard-codes that Drake deliberately concealed my capital parameters. Page 1 of 14 of the Contents Claim Summary sheet explicitly reveals an unredacted depreciation cap of $43,201.90 and an unredacted sales tax allocation of $5,437.45, which mathematically unmasks that my true inventory list total of $243,180.00 was intentionally truncated to avoid an honest contract audit. This text entry is completely un-authentic, lacks a designated system recipient, and displays a severe chronological collapse that shatters their alibi. I have applied a strict tab indentation layout to isolate their fabricated note directly onto the register: "[

CLASSIFICATION: CONFIDENTIAL RECORD LOG ENTRY ]

Mainframe Data Source: Claims Division Terminal

Note Date: January 29, 2021 @ 1:15 PM

Author Reference: Supervisor Sean Drake / Coordinator Jennifer Digons

Recorded Status: Closed / Verbal Settlement Applied (No Signed Release Executed)

Omissions Tracked: Replacement Cost Reserves Retained on Page 1 / Truncation ActiveOn January 29, 2021, Sean Drake spoke with the insured, Kerline Jean-Francois, regarding the contents inventory list. The insured agreed to settle the structural contents portion of the loss for an Actual Cash Value settlement floor of $31,942.93, with payment issued via check number 012932709. Replacement cost parameters and depreciation balances are held in reserve until physical repairs are completed, and the file was advised to be closed on the system register." The manufactured corporate log note can never constitute legal proof that a verbal negotiation occurred, especially considering that the underlying summary claim report and field adjuster letter were fully drafted and stamped a day prior on January 28, 2021. It is an absolute administrative travesty that the NJDOBI investigators and former Commissioner Marlene Caride, who is a sitting judge now, blindly accepted this piece of paper as a legitimate defense when it lacks any formal company headers, recipient information, or email carbon-copy (CC) logs, completely failing to establish how it was officially processed into the corporate system registry as evidence of a settlement. Most importantly, when I adamantly put the state regulators on notice that this negotiation never happened in reality,

Supervisor Investigator Robert Palentchar was forced to retreat, changing his written text to the evasive and contradictory phrase "on or about January 29, 2021" and labeling the conversation as "perpetrated or alleged" despite holding this paper, which definitively establishes that the state officials colluded with the licensees, knew the document was a fiction, and deliberately looked the other way. My independent federal civil rights lawsuit will force the NJDOBI to look straight at the chronological facts and the unvarnished truth I have been telling for the past six years, and unlike the state court below, the federal bench will compel absolute compliance with discovery under the threat of federal sanctions; however, I openly record on the file that I am fully willing to enter a voluntary dismissal of this entire action the exact second they produce authentic notes and phone logs to verify these facts. Digons acted as the internal corporate mastermind behind all inside and external fraudulent papers served on the register. Utilizing her senior corporate title, her specialized authority, and the highly sophisticated mainframe computer tools belonging to Farmers and MetLife, she manually manufactured the false January 29, 2021, case text notes behind my back, labeling them as a confidential system log to shield them from an honest contract audit. She altered the master November 2, 2020, summary invoice in two entirely different ways, applying a thick black marker to deface the baseline numbers and render the cover pages completely useless. Furthermore, Digons executed the unauthorized data leakage,

taking the confidential, statutorily sealed PHI compiled by Dodd and smuggling it straight into the open public registers of the NJDOBI under OPRA Request C259059 to execute a total character assassination on the public file. She broadcasted this private data across the defense law firms, Judge Beacham, and the civil motion staff to brand me negatively exposed to a massive circle of unauthorized third-party lawyers and paralegals who type their motions and exhibits.

7.Defendant Keith Romanowski, acting as an Investigator for the NJDOBI, is personally liable for administrative non-feasance and record suppression because he summarily closed the regulatory enforcement case on March 8, 2021, without ever contacting me to conduct a basic fact check. Digons simply told him over the network that a verbal negotiation had occurred, and he blindly accepted her narrative without demanding a single line of physical verification or mainframe audit trail. Finally, after I directly initiated contact to confront him, he sent an official letter certifying what Farmers Insurance held within its database constituted their private, personal documents that I was legally blocked from obtaining. He rubber-stamped their defense by falsely asserting that the claim had been processed fairly for depreciation, utilizing their manufactured duplicate text

logs to close out the state's enforcement file while executing a complete disclosure blackout.

8.Defendant Robert Johnson, acting as Investigator #3 for the Enforcement Division of the NJDOBI, is personally liable for administrative non-feasance and intentional record suppression when the regulatory tracking file was transferred to his desk from Keith Romanowski or Supervisor Investigator Robert Palentchar in May 2021. Defendants Johnson and Palentchar aggressively pressured me to enter into an appraisal process while possessing absolute, subjective knowledge that Farmers, coordinator Digons, and non-defendant supervisor Sean Drake had manufactured back-dated duplicate text blocks to falsely certify a verbal settlement. He callously advised me to engage in an independent legal pursuit before the courts, despite holding firsthand knowledge that the carrier and its corporate lawyers were deliberately withholding the unredacted evidence and the notes needed to prove my civil rights case under open judicial review, thereby actively shielding licensees from fraud investigations and refusing to compel the production of unredacted signatures on the open register.

9.Defendant Robert Palentchar, acting as a Supervisor Investigator for the NJDOBI, is personally liable for permitting the closure of a regulatory file based on vague, fraudulent documents and forcing an evasive timeline into the state's

official records. He explicitly contacted me via telephone to pressure me to accept the carrier's check, and went so far as to dictate to Farmers exactly how to draft the text of the letter that was subsequently sent to me. Furthermore, he actively compromised regulatory standards by asking the carrier if he were required to keep their internal papers confidential against the express mandates of public transparency law, completely abandoning his statutory obligation to penalize and sanction a licensee the absolute moment they were caught utilizing fabricated document duplicates and unauthorized medical leaks to defeat an insured consumer's claim, thereby executing a total administrative blackout to shield the licensees from open fraud code enforcement.

10.Defendant Zaniya Lewis, acting as an OPRA Records Custodian and Regulatory Lawyer for the NJDOBI, executed an intentional data blockade and wire fraud underlying this racketeering enterprise. On Thursday, August 6, 2026, at 11:29 AM, Defendant Lewis, transmitting an electronic wire communication from oprarecords@dobi.nj.gov directly to my email address jeremie1967@yahoo.com, executed an absolute administrative blackout. Defendant Lewis explicitly denied my request and closed the file, writing: *"Dear Kerline Jean-Francois, The New Jersey Department of Banking and Insurance is in receipt of your OPRA request. Please be advised that the documents you seek are part of an investigative file in a*

*completed investigation in which no formal disciplinary action was taken, and thus are not public records and are not disclosable under OPRA. N.J.A.C. 11:17-2.16(b)(6). This OPRA Request is denied and closed. Thank you, Zaniya Lewis, Esq."* This August 6, 2026 denial represents a completely fresh, independent act of administrative fraud and a separate post-complaint conspiracy. By utilizing a narrow regulatory code to permanently lock away the unredacted November 2, 2020 invoices, Lewis actively stepped into the active Civil RICO enterprise under color of law to shield Supervisor Palentchar's fabricated logs, block an honest regulatory disclosure, and prevent a self-represented consumer from obtaining the evidence needed to expose their fraud.

11.Defendant David Blake, acting as a defense trial lawyer on behalf of the corporate carrier, is civilly liable for executing a parallel, extra-judicial data track to state regulators to hide an ongoing civil rights violation and running an active discovery blockade before the court. During the November 2023 motion track, Blake compiled a massive, 487-page cross-motion document. He transmitted the full 487-page version directly to my home address, but when he filed the paperwork with the lower court judge, he surreptitiously extracted and withheld over 343 pages, presenting only 144 pages to the court clerk. Blake executed this dirty exhibit manipulation because he realized that Exhibit B inside the 487-page

version contained the raw, unredacted email strings between the state regulatory clerks and the carrier, exposing the illegal back-office coaching and the manufactured notes. Blake engaged in a deliberate, material misrepresentation of fact to conceal this illegal leakage.

12.Defendant Walter Kawalec, acting as an appellate defense lawyer on behalf of the corporate carrier, is civilly liable for orchestrating the appellate cover-up track and running a secondary record ruse to cover Blake's tracks on appeal. Kawalec transmitted a copy of a motion to vacate default to my home address totaling 70 pages, but explicitly wrote on the legal cover sheet that it was the “cross-motion to dismiss," attempting to deceive a self-represented litigant into believing the entire record had been properly preserved. To cement his bad-faith distortion of the record, Kawalec boldly asserted to the appellate panel that my failure to receive the full 487-page cross-motion document did not affect the ultimate outcome of the case, forcing the trial judge to rule completely blind. Furthermore, Kawalec filed a pre-emptive motion to dismiss with the New Jersey Supreme Court before I could even formally file my petition for review, running straight to the high court because he knew that under the court routing rules, a self-represented litigant is procedurally barred from filing a regular answer, forcing the Supreme Court

justices to review his manufactured, one-sided narrative first and secure a dismissal before my structural evidence could ever be seen on the merits.

13. Following my discovery of the defense fabrications, I extended a series of progressive, good-faith settlement offers to former defense lawyer, Lee Eckell, and Claim Manager James Heifferon, beginning with the baseline valuation on the November 2, 2020, invoice of $100,008.64 to Policano, Curtis, Drake, Heifferon, and Farmers, and systematically increasing the recovery margins to 50%, 60%, two-thirds, and ultimately to a 75% settlement offer. They ignored my offers. Heifferon callously rejected this mercy on December 3, 2021, laughing at my family's trauma and admitting on tape that their forced check represented an offer, completely destroying their settlement defense. Keith Romanowski and Supervisor Investigator Robert Palentchar committed absolute regulatory non-feasance by failing to demand the carrier's full internal phone logs, call recordings, and central database audits to expose who authorized Jennifer Digons to copy and paste these records. I did everything within my personal power to resolve this matter amicably over 65 long months ago, yet the carrier chose to spend massive amounts of corporate capital to pay shyster, conniving lawyers to execute a complete data blockade. Their strategy has completely backfired on their own file, as the carrier has spent far more in corporate legal fees than the entire value of the lost items

solely to avoid an open audit. To justify this discrimination, the corporate defense has placed a malicious profile on the public record.

**SECTION D: LEGAL CAUSES OF ACTION**

COUNT I — INTENTIONAL CONTRACT DISCRIMINATION AND RECORD SPOLIATION PURSUANT TO 42 U.S.C. SECTION 1981 **(Against Jennifer Digons and Robert Dodd)**

1. I incorporate every statement contained in previous paragraphs as if fully set forth herein.
2. Defendant Special Investigation Unit Investigator Robert Dodd is civilly liable under Section 1981 for executing a calculated bait-and-switch deception regarding the master November 2, 2020, Contents Claim Summary invoice. On December 4, 2020, Dodd under the explicit oral promise that he would return to my residence. Instead of honoring his promise, Dodd went behind my back and redact the bottom-line figures my eyes had witnessed, hiding the true mainframe calculated Actual Cash Value total of $100,008.64 to force an artificial cash ceiling onto the file.
3. Defendant Senior Technical Claims Coordinator Jennifer Digons acted as the internal corporate mastermind behind all inside and external fraudulent papers compiled to destroy my claim. Utilizing her corporate title,

specialized mainframe computer tools, and authority over the MetLife and Farmers database registries, she took the exact same November 2, 2020 master invoice and altered it in two entirely different ways, applying thick black ink blocks to deface the baseline totals and render the pre-printed cover pages completely useless. Furthermore, Defendant Digons manually manufactured the false January 29, 2021, case text log entries behind my back, labeling them as a confidential system log to shield them from a public audit and using them as their fraudulent "negotiation proof" to falsely claim a verbal settlement had occurred, thereby executing a total contract blockade to truncate my true inventory list total of $243,180.00.

- **COUNT II — CORPORATE VICARIOUS LIABILITY, SYSTEMIC UNDERWRITING DISCRIMINATION, AND RATIFICATION OF CIVIL RIGHTS VIOLATIONS (Against Defendant Farmers Insurance Exchange)**: Defendant Farmers Insurance held direct, subjective written notice of the systemic underwriting and corporate discrimination, profiling, and malicious document manipulation executed by its terminal agents through formal internal complaints delivered directly to senior claims coordinators and corporate supervisors. Farmers Insurance callously chose to maintain absolute corporate silence, completely refused to investigate my written alerts, and actively permitted its external lawyers to use ex-parte

maneuvers to force an unopened disclosure blackout, thereby officially ratifying and adopting the intentional civil rights violations executed by its staff under color of law.

- **COUNT III — DISCLOSURE BLACKOUT, SEVERE VIOLATION OF STATUTORY PRIVACY SHIELDS, AND THE MANUFACTURE OF SEPARATE CIVIL FORGERY (Against Jennifer Digons, Bobby Dodd, and Zaniya Lewis)**: This federal civil rights action is completely insulated from the doctrine of res judicata, claim preclusion, or any contractual time-bars under the insurance policies. Under well-established federal common law and the landmark United States Supreme Court ruling in American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995), state court summary judgment orders addressing standard economic contract services cannot bar independent federal statutory actions brought under 42 U.S.C. Section 1981 for intentional racial, national origin, and disability profiling. Under the Health Insurance Portability and Accountability Act privacy framework, 45 C.F.R. Parts 160 and 164, the New Jersey Insurance Information and Privacy Protection Act pursuant to N.J.S.A. 17:23A-1, and established New Jersey common law tort provisions governing the intrusion upon seclusion and the public disclosure of private facts, a consumer's private electronic records and Protected Health Information (PHI) constitute

highly confidential, statutorily sealed data. Investigator Dodd actively abused his position of trust, went behind my back, and placed my private, confidential records and PHI into a permanent corporate claim file to brand me with an addictive personality. Senior coordinator Jennifer Digons then compiled this unauthorized psychological profile and smuggled the confidential data pages straight to state regulatory supervisors under OPRA Request C259059 to execute a total character assassination on the public register, placing my family in immediate danger of international kidnapping rings during an active Haitian national gang violence crisis by broadcasting private ancestral land wealth and deeds onto an open register.

- **COUNT IV — CONSTITUTIONAL DUE PROCESS VIOLATIONS AND RETALIATORY PROTECTION OF LICENSARS (Against Marlene Caride, Robert Johnson, Robert Palentchar, and Keith Romanowski)**: Defendants Marlene Caride, Robert Johnson, Robert Palentchar, and Keith Romanowski, acting in their individual capacities under color of state law, actively violated my Fourteenth Amendment right to Procedural Due Process and Equal Protection by running an intentional regulatory blind-eye operation to shield an insurance licensee from open fraud enforcement. Chief Investigator Robert Johnson, Supervisor Investigator Robert Palentchar, and Senior Investigator Keith Romanowski

held explicit, written notice from me confirming that I never once entered into a verbal negotiation or accepted a settlement check. They possessed direct access to the carrier's text blocks showing an absolute absence of a negotiation date, yet callously chose to accept Jennifer Digons's fabricated duplicate sheets as legitimate evidence, forcing the evasive phrase 'on or about January 29, 2021' into the state's closing reports to block an active regulatory audit. Under the direct administrative oversight of Commissioner Marlene Caride, the Department completely ignored my formal civil rights complaints, permitted the claims division to smuggle my highly sensitive, confidential electronic profile and PHI through an open public database registry, and allowed the carrier to use an unauthorized August 2023 policy termination to blacklist my household. This active regulatory non-feasance and intentional refusal to protect a citizen from document spoliation constitutes a severe violation of federal law.

- **COUNT V — DECEPTIVE PARALLEL DATA ROUTING, EVIDENCE FABRICATION, AND INTENTIONAL INTER-AGENCY CIVIL RIGHTS CONSPIRACY (Against Jennifer Digons, Bobby Dodd, Zaniya Lewis, David Blake, Walter Kawalec, and the Corporate Law Firm of Marshall Dennehey)**: The unredacted public records produced under OPRA Request C259059 establish an actionable pattern of

bad-faith litigation misconduct, active discovery suppression, and an intentional civil rights conspiracy executed between Farmers Insurance, and the investigators of the New Jersey Department of Banking and Insurance. The corporate law firm of Marshall Dennehey and appellate lawyer Walter Kawalec executed this pre-filing data leakage specifically to poison the regulatory waters, allow senior coordinator Jennifer Digons to assemble her fabricated notes on April 23, 2021, and insulate their office from an active contract audit, while concurrently maintaining a complete discovery blackout before the Supreme Court judges to secure a fraudulent dismissal. A private insurance contract can never grant corporate agents or their defense lawyers a legal license to execute a parallel, unstamped document smuggling ring to defeat a citizen's Fourteenth Amendment right to procedural due process, the prior state court dismissals carry zero preclusive weight, and I maintain an absolute right to bring my federal civil rights indictment against both the individuals, the law firm, and the carrier before an independent jury.

**PAGE 4, PART IV: INJURIES**

As a direct, proximate, and foreseeable consequence of the defendants' continuous, intentional, and malicious civil racketeering conspiracy and bad-faith record suppression, I have suffered profound, permanent, and irreversible injuries to my physical, emotional, and psychological health. I am the first to admit that I am not near being perfect. However, I cannot understand why or how this system has allowed this corruption to continue when I have done everything within my human power to seek an honest resolution. I even proactively tried to make a peace offer to secure closure for my home, despite possessing absolute knowledge that Farmers Insurance and its internal employees submitted completely fraudulent, manipulated papers to the New Jersey Department of Banking and Insurance (NJDOBI). The individual state regulatory employees know with absolute certainty that these documents are crudely altered, because I have adamantly and continuously denied on the record that any negotiation ever occurred at any time, with anyone. Yet, not one single state investigator had the integrity to confront Farmers or order them to stop, choosing instead to turn a blind eye to intentional corporate fraud. These individuals are all grown adults who hold a high moral and

statutory duty to the public through their jobs, and they failed completely to help an honest resident.

The defense lawyers, Lee Eckell, Walter Kawalec, David Blake, Quinn M. McCusker, Robert Berns, and the leadership at Marshall Dennehey freely took on this case because they operate under the bad-faith assumption that certain corrupt state judges will always have their back. They believe they possess absolute immunity as privileged members of the court, operating hand-in-hand with a captured administrative registry that exists solely to protect Farmers Insurance and its employees from accountability. I have shown immense, agonizing patience throughout this nightmare; I waited for two full years, filing this federal action just before the strict two-year anniversary of the exact date I first discovered their hidden fraud, proving that I exhausted every administrative avenue before looking to the federal bench. I did everything in my power to avoid this conflict. A substantial portion of the total money from the contents insurance claim is explicitly dedicated to go to charity to help those in need. Instead, these defendants have maliciously held this money, money meant for the poor, for six long, agonizing years.

Because of their greed, I have been forced to deplete my own personal assets and funds to help the poor and physically replace the essential items that were lost in the fire. I transmitted ironclad physical evidence directly to Supervisor Investigator Robert Palentchar, treating our correspondence with the highest level of legal and court-like solemnity. I completely proved my case to the state court and I proved it to the NJDOBI, yet they completely failed me and abandoned their oaths. What an absolute shame! The defendants' coordinated data blackouts, record fabrications, signature forgeries, and three-investigator administrative runarounds have directly caused a severe and agonizing psychiatric regression of my pre-existing mental health conditions, triggering intense clinical anxiety and deep depression that I had previously managed but which has now violently spiraled into constant, debilitating panic attacks and physical weeping.

Furthermore, the extreme pressure of this systemic targeting has inflicted severe, agonizing physical pain upon my body, which has been profoundly worsened and exacerbated by the grueling, long hours I am forced to sit and spend physically scripting, typing, and putting these massive legal papers together entirely alone to defend my home against their structural fraud. Every single named defendant possessed actual, direct, and written knowledge of my vulnerable mental and physical health conditions all along, fully aware that my deep emotional distress

and physical pain are violently triggered every time I am forced to see or interact with them.

The psychological impact of this continuous corporate and administrative targeting has left me completely traumatized. I am trapped in a constant state of clinical anxiety, to the point where I am now terrified to open my computer or log into my email, paralyzed by the fear that I will find another hostile notification from the court or a malicious motion from the defense lawyers. I feel this exact same overwhelming dread every single time I walk out to open my physical mailbox. Why should an honest citizen be forced to live in absolute fear? I am not in trouble. I am not in debt. I have always paid every single one of my bills entirely on time. I did nothing wrong. It is these defendants who have broken the law, targeted my home, and inflicted this profound emotional trauma upon me, yet they have weaponized the legal process so aggressively that they have left an innocent consumer living like a fugitive in her own home.

I have explicitly explained my severe psychiatric and physical vulnerabilities to them repeatedly, including the fact that I actively receive mandatory medical therapy to manage these conditions. My medical history is strictly confidential and private under federal law, yet I have never hidden my profound suffering from

these officials because I desperately needed them to communicate with one another and finally order this targeting to stop. The unauthorized public exposure of this confidential Protected Health Information (PHI) and statutorily sealed data by senior claims coordinator Jennifer Digons, Investigator Bobby Dodd, and defense lawyers David Blake and Walter Kawalec to open public registries and external networks has directly amplified this trauma, stripping away my federal privacy shields to execute an institutional character assassination, which completely justifies the exceptional, enhanced punitive and compensatory awards demanded in this action to break this corporate defense model forever.

**PAGE 4, PART V: RELIEF**

I, Marie Jean-Francois, respectfully demand judgment against all named defendants, requesting the following specific monetary, punitive, statutory, and equitable relief for this multi-year racketeering, bad-faith record spoliation, and regulatory cover-up conspiracy:

A. **Joint Corporate and Coordinator Damages**: I demand compensatory and punitive damages, jointly and severally, in the absolute total amount of $250,000,000.00 directly against corporate Defendant Farmers Insurance (including Metropolitan Group Property and Casualty Insurance Company) and Defendant Jennifer Digons, Senior Technical Claims Coordinator, to punish them for their extreme egregious malice, bad-faith claims manipulation, intentional fabrication of claim logs, and crude signature forgery to cheat an unrepresented consumer.

B. **Joint Defense Counsel and Firm Damages**: I demand punitive and compensatory damages, jointly and severally, in the total amount of $25,000,000.00 directly against Defendant Walter Kawalec, Defendant David Blake, and Defendant The Corporate Law Firm of Marshall Dennehey, to punish them for their coordinated campaign of courtroom fraud, systemic exhibit

manipulation, and bad-faith suppression of the raw, back-office communications between the carrier and the individual state regulatory employees.

C. **Individual Regulatory Employee Damages**: I demand independent punitive and compensatory damages in the total amount of $25,000,000.00 targeted strictly against individual Defendants Marlene Caride, Robert Johnson, Robert Palentchar, Keith Romanowski, and Zaniya Lewis in their individual capacities under color of state law, to hold them personally and financially accountable for their gross official misconduct, bad-faith suppression of public records, deliberate violation of court orders, and illegal backdoor collusion with a private insurance defense team to shield corporate fraud from judicial oversight.

D. **Independent Internal Operations Damages**: I demand independent punitive and compensatory damages in the total amount of $50,000,000.00 directly against Defendant Bobby Dodd, Special Investigation Unit Investigator, to punish him for his separate, intentional bait-and-switch ruse, fraudulent inducement, unlawful physical trespass upon my private residential premises,for their intentional, malicious, and reckless violation of federal statutory privacy shields under the Health Insurance Portability and Accountability Act (HIPAA) Privacy Framework, 45 C.F.R. Parts 160 and 164, and the New Jersey Insurance Information and

Privacy Protection Act under N.J.S.A. 17:23A-1, and the multi-year withholding of the unredacted master billing invoices.

E. **Mandatory Federal Injunction For Suppressed Records and Audits**: I respectfully demand the immediate issuance of a mandatory federal injunction compelling individual Defendants Marlene Caride, Robert Johnson, Robert Palentchar, Keith Romanowski, and Zaniya Lewis to immediately release and deliver every single internal investigative document, data log, and communication history file concerning my claim, specifically including the unredacted corporate negotiation notes and the original unredacted November 2, 2020, invoice displaying the true $100,008.64 valuation. I further demand a mandatory permanent injunction directing the New Jersey Department of Banking and Insurance to launch a full, sweeping statutory audit into every single document and record package transmitted or processed by senior claims coordinator Jennifer Digons for other insurance consumer complaints, to expose the full systemic breadth of her pattern of record manipulation, since the NJDOBI has historically remained strictly partial and protective of Farmers Insurance Exchange to shield them from code enforcement.

F. **Award of Pro Se Costs and Expenses**: I demand an explicit award covering any and all filing fees, copy fees, technological costs, and administrative expenses incurred throughout my multi-year fight to extract these hidden records from these coordinated public and private entities.

G. **Absolute Challenge and Corporate Striking**: I explicitly challenge these defendants before this Court: if they can produce these internal notes and prove they are authentic, I will immediately surrender myself to walk straight into a prison cell and pay all defense legal fees and damages. If they cannot, all internal corporate or administrative notes asserting the existence of a "compromise settlement" must be declared completely fraudulent, null, void, and permanently struck from all state, federal, and insurance industry clearinghouse registries, and a permanent injunction must issue barring the defendants from ever using these fabricated files against me again.

**LEGAL BACKGROUND ENFORCEMENT PARAGRAPH FOR PUNITIVE DAMAGES**

The Defendants' behavior is an absolute, shocking outrage against decency and the rule of law, satisfying the highest standards for exemplary punitive damages under New Jersey law and federal civil rights jurisprudence. To escape a mere

$100,008.64 contents claim value—representing only about $20,000.00 more than what they claimed to pay under their manufactured "negotiation settlement"—the corporate carrier and its internal handlers deliberately spent massive corporate capital to pay conniving lawyers to fabricate legal papers, deface physical evidence, and violently violate my federal statutory privacy shields. Under the New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9 et seq., and the landmark holding in *Pickett v. Lloyd's*, 131 N.J. 457 (1993), punitive awards are legally mandated when a carrier's actions display an intentional, egregious, and reckless indifference to the rights of the insured passenger. This deliberate inter-agency conspiracy required absolute trust among the bad actors to ensure that senior technical claims coordinator Jennifer Digons would keep quiet while she actively altered the original November 2, 2020 invoice in two entirely different ways, defaced the pre-printed cover pages, and fabricated back-dated case text logs. To finalize this deception, they went behind my back to leak my highly sensitive Protected Health Information (PHI) to state regulatory supervisors and outside law firms to brand me a criminal extortionist. Under well-settled New Jersey insurance rules, including N.J.A.C. 11:2-17, an insurance carrier is strictly prohibited from utilizing misrepresentations, fabricated document duplicates, or unauthorized medical profiling to defeat an insured consumer's claim. Because the individual state regulators completely abandoned their oaths and operated as a partial

protective umbrella to shield Farmers Insurance Exchange from code enforcement, these egregious acts completely satisfy the statutory thresholds of actual malice and wanton misconduct, fully justifying the immense punitive and compensatory relief demanded in this action to permanently dismantle this racketeering model.

**Against Defendants Farmers Insurance Exchange, Jennifer Digons, and Bobby Dodd, Jointly and Severally Additional Damage based on new development evidence**

The corporate carrier Farmers Insurance Exchange, Special Investigation Unit Investigator Bobby Dodd, and Senior Claims Coordinator Jennifer Digons are jointly and severally liable for an explicit, independent compensatory and enhanced punitive damages award in the absolute baseline amount of **$50,000,000.00** for their intentional, malicious, and reckless violation of federal statutory privacy shields under the Health Insurance Portability and Accountability Act (HIPAA) Privacy Framework, 45 C.F.R. Parts 160 and 164, and the New Jersey Insurance Information and Privacy Protection Act under N.J.S.A. 17:23A-1. These corporate defendants acted with extreme moral turpitude when they took my highly confidential Protected Health Information (PHI) and private physical and mental health therapy tracks—which I shared with Investigator Bobby Dodd on December 4, 2020, in strict confidence off the record after ordering him to shut off his tape recorder and deliberately placed this data into a permanent corporate

database to brand a disabled consumer with an addictive personality. Senior coordinator Jennifer Digons then took this unauthorized psychological profile and smuggled my unredacted mental health diagnosis directly onto the state's open registries and public tracking desks to execute an institutional character assassination, leaving my personal name, home address, and telephone number exposed to a massive circle of unauthorized third-party lawyers and paralegals who type their motions and exhibits.

This egregious data leakage was executed with the specific, bad-faith intent to poison the regulatory waters, shield the carrier from an honest contract audit, and manipulate the state courts into granting an ex-parte summary judgment dismissal without an oral argument. Under well-settled New Jersey insurance rules, a private insurance company and its adjusters are strictly barred from weaponizing a consumer's confidential medical records or utilizing fabricated document duplicates to defeat a contract claim. Because their malicious dissemination of my statutorily sealed privacy records stripped away my federal privacy shields and placed my family members in immediate physical danger of international kidnapping rings during an active gang violence crisis in Haiti, this extreme violation of federal and state privacy laws completely satisfies the statutory thresholds of actual malice and wanton misconduct, fully justifying the severe, independent $50,000,000.00 damage award demanded in this count.

## CONCLUSION AND PRAYER FOR JUSTICE

Honorable Judge of the United States District Court: I, Marie Jean-Francois, pro se Plaintiff, lay all the unvarnished facts, the prima facie evidence, the structural merits, and the plausible standards of this case directly before you. I respectfully implore this Court to understand that I have done absolutely everything within my human power to avoid initiating this federal lawsuit. I never wanted to be in this position. For years, I have actively and relentlessly searched for professional legal representation, and I am still actively looking for an attorney to take this case. Because I am currently forced to stand before this bench completely self-represented, I have had to sit for grueling, endless hours single-handed, scripting and writing numerous long papers solely because I must defend my home, my family, and my life against a mountain of continuous corporate lies. The defendants have weaponized the legal system to inflict intentional physical and emotional trauma upon me. Defense lawyers David Blake and Walter Kawalec willfully and consciously keep writing endless, bad-faith motions for the sole purpose of extracting more billable money for their firm while actively running a campaign to break my body and spirit. I explicitly tell this Court: do not be fooled or distracted by the massive scale of the monetary damages I am demanding in this complaint. I have suffered far too much for this to be about money. I do not need or want a single penny of this money if the defendants can simply produce their secret

internal negotiation notes to this Court to verify their authenticity. If they can show this Court a single authentic, un-forged record proving a negotiation took place, I will gladly walk away and give up my entire claim. But they cannot.

In fact, despite knowing that their notes were complete fabrications, I even swallowed my pride and proactively offered to negotiate with them just to obtain closure and avoid a lawsuit. They rejected my peace offerings; they preferred to inflict intentional pain. If I were awarded these damages, I intend to give a massive portion of this money directly to charity, because my battle is for truth, dignity, and accountability. I deserve every single dollar of this monetary relief because the defendants' behavior is an absolute outrage against decency and the law.

During the discovery phase of this litigation, I shall formally submit the heavily redacted November 2, 2020, invoice directly to this Court. Your Honor will be able to rely on this physical document to see with your own eyes that the corporate enterprise actively fabricated evidence. The individual state regulatory employees know with absolute certainty that under federal law, they cannot keep these fraudulent records hidden under a false shield of confidentiality. Discovery will conclusively expose that Farmers Insurance, Jennifer Digons, non-defendants Sean Drake and vincent policano actively transmitted two completely different, altered, and conflicting versions of the exact same November 2, 2020 invoice. There was absolutely no negotiation. The defendants' own written records completely expose

their guilt because they actively label their own core accusation against me as an "alleged" settlement. I ask this Court: how can a transaction be labeled as "alleged" by the very corporate enterprise and state agency clerks who claim to hold definitive, tangible proof of its completion? You cannot fabricate a fake story out of thin air and then call it "alleged" to dodge a consumer audit. I do not need a law degree or decades of legal experience to show an ordinary jury of my peers that a billing invoice has been crudely faked and stripped of its numbers. It is now entirely up to these defendants to decide if they want to let me expose their multi-year racketeering scheme in front of a New Jersey jury. I explicitly record on the public register my final, unassailable challenge to every corporate defendant, private lawyer, and state regulator involved in this multi-year track: I hold absolute, firsthand knowledge that there are zero authentic, tangible notes or data logs in existence to prove a verbal negotiation took place on January 29, 2021. Every single telephone call between me and all Farmers Insurance and Mercer employees was fully recorded, I completely rely on the central mainframe phone logs and network carrier records to show whether non-defendant Sean Drake ever contacted me on January 29, 2021, along with the exact timestamped length of any such call. If the defendants can produce an authentic, un-manipulated phone log verifying that Sean Drake contacted my terminal and that I entered into a verbal settlement on that date, I pledge before this Court that I will immediately

enter a voluntary dismissal of this entire federal action with prejudice, pay all defense lawyers' and individual defendants' legal fees, and immediately surrender my person to walk straight into a federal prison cell to face criminal prosecution for white-collar crime, filing false administrative complaints with the NJDOBI, public defamation, and initiating a frivolous civil rights lawsuit to extort corporate assets. Fair enough ! Let the defendants transmit this exact phone log to me and to this Court within a matter of days after service of this Amended Complaint. This definitive proof should already be sitting inside my permanent claim file at Farmers, on the desks of all private lawyers involved in this defense, and within the enforcement archives of the NJDOBI. The individual state regulatory employees can easily request this data from the carrier or the telephone utility provider right now to get themselves out of this administrative mess. Furthermore, because former Commissioner Marlene Caride is now a sitting judge, she holds the absolute judicial power to issue an immediate subpoena for these exact phone logs. I explicitly declare that I am fully prepared to walk straight into her courtroom in Hudson County for my formal criminal prosecution and sentencing. I will completely waive all rights to challenge jurisdiction, I will raise zero objections regarding a conflict of interest, and I shall let Judge Caride single-handedly decide my faith and my liberty on the open record. They refuse to produce this one simple phone log because they have known from day one that no negotiation ever

happened in reality, and they are terrified to let a federal judge look straight at the evidence of their fraud.

Your Honor, as a United States District Court Judge, you are not a subordinate state court judge, and I know you will not hesitate to protect the U.S. Constitution and send this meritorious case straight to trial. To ensure the integrity of the judicial record, we absolutely need to see all original notes and Dodd's December 4, 2020 full final report. The defendants have already willfully ignored and trampled upon valid subpoenas signed by the state court. I respectfully request that your Honor sign a fresh federal subpoena to forcefully extract these hidden files directly from the desks of the state regulators and Farmers Insurance. We require the immediate production of both sets of records for a direct physical comparison. I am willing to dismiss voluntarily the case with prejudice and sign confidentiality to keep the case off public record, if they prove their lies.

September 02, 2026
Respectfully submitted,
*Marie Jean-Francois*
Marie Jean-Francois Plaintiff, Pro Se
973.338.0094 / jeremie1967@yahoo.com

## SECTION VII: CERTIFICATION AND SIGNATURE

Pursuant to Federal Rule of Civil Procedure 11, I, Marie Jean-Francois, hereby certify under penalty of perjury that to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, this Amended Civil Rights Complaint is well-grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing jurisprudence. I explicitly certify that this master document is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of active litigation.

The physical records include the unredacted SIU December 4, 2021, report, the chronological electronic logs, the structural evaluation metadata showing a January 29, 2021, negotiation, the UNredacted original November 2, 2020, billing invoices with my original initials and circles, and the direct August 2026 wire communications from Zaniya Lewis, conclusively establish a continuous pattern of administrative record spoliation, interstate wire fraud, and severe violations of federal statutory privacy shields. I maintain an absolute, non-delegable right under the Seventh Amendment to the United States Constitution to present this civil rights indictment against these eleven public and private individuals before an independent jury of my peers.

Respectfully submitted,
*Marie Jean-Francois*

Marie Jean-Francois, Plaintiff, Pro Se

41 Fritz Street

Bloomfield, New Jersey 07003

973-338-0094

jeremie1967@yahoo.com

September 02, 2026

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW JERSEY**

**MARIE JEAN-FRANCOIS,**

*Plaintiff, Pro Se*

v.

**NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE (NJDOBI);**
**MARLENE CARIDE, individually and in her official capacity as former NJDOBI Commissioner;**
**ROBERT PALENTCHAR, individually and in his official capacity as NJDOBI Supervisor of Investigations;**
**KEITH ROMANOWSKI, individually and in his official capacity as NJDOBI Investigator;**
**ROBERT JOHNSON, individually and in his official capacity as NJDOBI Investigator;**
**ZANIYA LEWIS, ESQ., individually and in her official capacity as NJDOBI Regulatory Counsel/Attorney;**
**FARMERS INSURANCE CARRIER;**
**BOBBY DODD, individually and in his official capacity as Farmers SIU;**
**JENNIFER DIGONS, individually and in her official capacity as Farmers Senior Technical Claim Coordinator;**
**MARSHALL DENNEHEY, P.C.;**
**DAVID BLAKE, ESQ., individually and as Co-Conspirator;**
**and WALTER KAWALEC, ESQ., individually and as Co-Conspirator,**

*Defendants.*

# ADDITIONAL ATTACHMENT FOR FEDERAL CIVIL COMPLAINT (FORM PRO SE)

## PAGE 1, SECTION I: PARTIES TO THIS COMPLAINT

### Box A: Plaintiff Information

- **Name:** Marie Jean-Francois
- **Address:** 41 Fritz Street, Bloomfield, NJ 07003
- **Phone Number:** 973-338-0094
- **Email Address:** jeremie1967@yahoo.com

### Box B: Defendant(s) Information

1. **Defendant 1:** New Jersey Department of Banking and Insurance (NJDOBI)
   *Address:* 20 West State Street, Trenton, NJ 08625
2. **Defendant 2:** Marlene Caride, Individually and in her official capacity as former NJDOBI Commissioner
   *Address:* 20 West State Street, Trenton, NJ 08625
3. **Defendant 3:** Robert Palentchar, Individually and in his official capacity as NJDOBI Supervisor of Investigations
   *Address:* 20 West State Street, Trenton, NJ 08625
4. **Defendant 4:** Keith Romanowski, Individually and in his official capacity as NJDOBI Investigator
   *Address:* 20 West State Street, Trenton, NJ 08625
5. **Defendant 5:** Robert Johnson, Individually and in his official capacity as NJDOBI Investigator
   *Address:* 20 West State Street, Trenton, NJ 08625
6. **Defendant 6:** Zaniya Lewis, Esq., Individually and in her official capacity as NJDOBI Regulatory Counsel/Attorney
   *Address:* 20 West State Street, Trenton, NJ 08625
7. **Defendant 7:** Farmers Insurance Carrier (Corporate Entity)
   *Headquarters:* 4680 Wilshire Boulevard, Los Angeles, CA 90010
   *New Jersey Address:* c/o Corporate Creations Network Inc., 820 Bear Tavern Road, Third Floor, West Trenton, NJ 08628
8. **Defendant 8:** Bobby Dodd, Individually and in his official capacity as Farmers SIU
   *Address:* 4680 Wilshire Boulevard, Los Angeles, CA 90010
9. **Defendant 9:** Jennifer Digons, Individually and in her official capacity as Farmers Senior Technical Claim Coordinator
   *Address:* 4680 Wilshire Boulevard, Los Angeles, CA 90010

10. **Defendant 10:** Marshall Dennehey, P.C. (Civil Co-Conspirator Private Defense Firm)
*Address:* 15000 Midlantic Drive, Suite 200, Mount Laurel, NJ 08054
11. **Defendant 11:** David Blake, Esq. (Private Defense Attorney Co-Conspirator)
*Address:* Marshall Dennehey, P.C., 15000 Midlantic Drive, Suite 200, Mount Laurel, NJ 08054
12. **Defendant 12:** Walter Kawalec, Esq. (Private Appellate Defense Attorney Co-Conspirator)
*Address:* Marshall Dennehey, P.C., 15000 Midlantic Drive, Suite 200, Mount Laurel, NJ 08054

**PAGE 2, PART II: BASIS FOR JURISDICTION**
**Box A: Select the Basis for Jurisdiction**
*Selection:* Federal Question

**Section B: Specific federal statutes or constitutional provisions at issue.**
42 U.S.C. § 1983 – Deprivation of Civil Rights Under Color of State Law.
The First Amendment – Constitutional protection of Free Speech and the absolute right of a citizen to petition the government for a redress of grievances; violated via retaliatory public building access blackouts and checkpoint lockouts.
The Fourteenth Amendment – Violation of the Due Process and Equal Protection Clauses via selective, bad-faith municipal enforcement and character defamation to destroy public database records.
18 U.S.C. § 1962 – Federal Civil RICO Act; establishing an active, multi-year fraudulent enterprise utilizing systemic mail and wire fraud to execute ex-parte data ruses, manufacture backdated insurance tracking records, and deliberately withhold public records to deceive the judiciary, which directly instigated this lawsuit through the orchestration of an illegal, warrantless property inspection on October 22, 2024, to surreptitiously capture false code enforcement evidence behind my back. This unauthorized property invasion occurred directly across the physical real estate lines of my private home address at 41 Fritz Street, Bloomfield, New Jersey, a full year after the underlying state lawsuit was initiated on October 13, 2023, under Docket Number ESX-L-006762-23. Because this illegal municipal inspection was executed on October 22, 2024, to secretly manufacture false evidence for an ongoing court proceeding, it constitutes a completely fresh, independent transactional injury and an independent post-complaint conspiracy. This transaction was never part of the original record below, and it could not have been raised in the initial filing, which definitively establishes that this matter is a totally new case and cannot be barred by res judicata.
28 U.S.C. § 1367 – Supplemental Jurisdiction over State Law Claims; granting this Court absolute authority over my underlying counts of Common Law Fraud and Breach of Contract against Defendant Farmers Insurance Carrier and Defendant Mercer Customer Engagement, as they form part of the exact same continuous nucleus of operative facts and encompass long-standing ongoing economic injury initiated over three years ago on September 22, 2023.

**Section 2: Statement of Venue**

Venue is perfectly proper in the United States District Court for the District of New Jersey pursuant to **28 U.S.C. § 1391(b)**. The corporate fraud, bad-faith document withholdings, data blackouts, and systematic refusal of state officials to comply with mandatory statutory record rules all occurred directly at administrative offices and desks located inside Mercer County and Essex County, New Jersey. The physical real estate and residential property lines targeted, damaged, and blacklisted by this fraudulent adjustment scheme is my private home address located at 41 Fritz Street, Bloomfield, New Jersey 07003.

**<u>PAGE 3</u>, PART III: STATEMENT OF CLAIM**

**SECTION A: WHERE DID THE EVENTS TAKE PLACE?**

The administrative offices of the New Jersey Department of Banking and Insurance (NJDOBI) at 20 West State Street, Trenton, New Jersey; the physical real estate and residential property lines of my private home at 41 Fritz Street, Bloomfield, New Jersey; and the corporate and legal defense operations networks of Farmers Insurance Carrier and Marshall Dennehey, P.C. at 15000 Midlantic Drive, Suite 200, Mount Laurel, NJ 08054

**SECTION B: WHEN DID THE EVENTS HAPPEN?**

Continuous from the September 22, 2023 breach of contract and corporate fraud by Farmers

**SECTION C: DIVERSITY OF CITIZENSHIP ROUTING**

NOT APPLICABLE (Primary Jurisdiction is based entirely on a Federal Question pursuant to 28 U.S.C. § 1331).

**REGULATORY ROUTING COMPLIANCE STATEMENT**

The federal statutes and constitutional provisions at issue in this action, which provide the absolute legal basis for this Court's primary subject-matter jurisdiction and supplemental authority, are 42 U.S.C. § 1983 (Deprivation of Civil Rights Under Color of State Law), the First Amendment (Right to Free Speech and the absolute right of a citizen to petition the government for a redress of grievances), the Fourteenth Amendment (Violation of the Due Process and Equal Protection Clauses via selective municipal enforcement and state-action collusion), 18 U.S.C. § 1962 (Federal Civil RICO Act for multi-year corporate fraud, mail fraud, and wire fraud executed by the insurance enterprise), and 28 U.S.C. § 1367 (Supplemental Jurisdiction over state law claims for Breach of Contract and Common Law Fraud forming part of the exact same continuous nucleus of operative facts).

**SECTION C: MASTER CHRONOLOGICAL FACTS AND PERIODS OF CULPABILITY**

To establish the continuous, multi-year civil racketeering enterprise and state-action conspiracy executed by the defendants, I present the precise chronological dates and periods during which each independent actor operated to manipulate my insurance records, execute data blackouts, and deceive the judiciary:

**Defendant Farmers Insurance Carrier and Defendant Bobby Dodd (December 4, 2020, to Present):** Initiated the foundational corporate fraud, contract breach, and concealment of the unredacted billing ledger. They manufactured the fraudulent "negotiation" narrative to cover up

an unauthorized depreciation reduction and have continuously maintained this evidence blackout through the present day.

**Defendant Jennifer Digons (March 8, 2021, and May 2021):** Actively deployed the engineering adjustment ruse. On March 8, 2021, she coordinated with state regulators to conceal her finalized structural evaluation report, and in April 2021, she formally submitted false claim coordinator logs to the NJDOBI to maliciously paint me as a criminal extortionist.

**Defendant New Jersey Department of Banking and Insurance (NJDOBI) (February 16, 2021, to August 10, 2026):** Opened its captured administrative registry on February 16, 2021, and continuously operated as an umbrella shield for the corporate enterprise for over five years, culminating in its absolute refusal to intervene on my behalf.

**Defendant Investigator Keith Romanowski (March 8, 2021, to April 12, 2021):** Handled my initial consumer complaint with active bias, willfully accepting manipulated data from Jennifer Digons, refusing to perform a standard policy audit, and abruptly closing his file on April 12, 2021, to suppress the carrier's premium fraud.

**Defendant Marlene Caride (April 12, 2021, to September 2021):** Exercised gross administrative negligence and bad-faith oversight as Commissioner; she sent deceptive personal emails on July 1, 2021, wishing me well while actively permitting her subordinates to lock down my files and insulate Farmers from regulatory sanctions.

**Defendant Enforcement Supervisor Robert Palentchar (April 13, 2021, to Present):** Assumed absolute control over my administrative file the day after Romanowski closed it. For over five years, he personally dictated what documentation would be hidden from me, culminating in his back-office December 23, 2025 email using ongoing litigation as a pretext to deny me public records while mockingly wishing me a joyous holiday season.

**Defendant Investigator #3 Robert Johnson (May 2021 to September 2021):** Accepted a bad-faith transfer of my complaint file directly from Supervisor Palentchar, running a dilatory, low-level investigative ruse for five months to stall my inquiries and bury the structural fraud.

**Defendant David Blake, Esq. and Defendant Marshall Dennehey, P.C. (November 2023 to October 2025):** Entered the active litigation track by flatly refusing to turn over court-ordered discovery, intentionally defying valid judicial subpoenas to suppress my files, and perpetrating a direct fraud on the court. To hide their corruption, David Blake compiled a massive 487-page cross-motion but surreptitiously stripped out "Exhibit B" from the version filed with the lower court judge on purpose, leaving only 144 pages on the official record to permanently hide the back-office email strings between Farmers and the NJDOBI. Blake then walked into the courtroom with no physical files, completely empty-handed, and maliciously flipped the narrative by aggressively accusing me of fabricating the very evidence he was actively withholding.

**Defendant Walter Kawalec, Esq. (January 2025 to May 2026):** Orchestrated the appellate cover-up track to intentionally paralyze my appeal and block my structural evidence. When I demanded the missing 487-page cross-motion record from him in January 2025, he completely refused to send it, forcing me to request it from the lower court clerk, who could only produce

the hollow 144-page version Blake had filed. To stall for time, Kawalec served me with a separate, deceptive 70-page motion to vacate default as a dilatory tactic.When I directly confronted Walter Kawalec regarding the missing records, he sent me a 70-page copy of a motion to vacate default and falsely claimed that he had retrieved the cross-motion straight from the official archives of the court file. I immediately exposed his deception, informing him that because the lower court records only contained the hollow 144-page version filed by David Blake, it was a mathematical and physical certainty that he was lying, as a true retrieval from the court archives would have produced 144 pages and not his manufactured 70-page package. Crucially, while these defense attorneys continuously complain to the judiciary that I call them liars on the record, they have consistently failed to deny these accusations under oath, they have never dared to file a defamation counterclaim against me, and they have never sent me a single legal bill, because they know the unredacted discovery completely establishes their fraud. Because of these missing records, the Appellate Division repeatedly flagged my filing as deficient, preventing my brief from being accepted on the merits and locking out "Exhibit B", the crucial electronic files containing the back-office correspondence between Jennifer Digons, Keith Romanowski, and Robert Palentchar. Kawalec deliberately waited until February 28, 2025, to email me the 487 pages, and March 3, 2025, to mail the physical copies. He knew it was far too late to cure my appellate record. He maliciously filed a motion to deny me any further extensions of time, which the court granted based on his obstruction. Now that my case is before the New Jersey Supreme Court, Kawalec has filed a pre-emptive motion to dismiss before I can even submit my petition. As an experienced attorney, he knows the Supreme Court will review his motion first and that I am procedurally barred from answering, executed solely to prevent a reversal and remand that would force them to produce the fake notes and the unredacted November 2, 2020 invoice. To finish his deception, Kawalec falsely accused me before the high court of claiming David Blake fabricated evidence, while completely hiding the physical fact that they are actively suppressing the very files that prove the fraud.

**Defendant Regulatory Counsel Lewis, Esq. (August 6, 2026, to Present):** Intervened directly as the NJDOBI attorney to block my emergency administrative disclosure petitions, providing bad-faith legal cover to shield Palentchar's database records and block me from accessing the unredacted November 2, 2020 invoices.

## A. THE JURISDICTIONAL SHIELD AGAINST RES JUDICATA

This independent action is a distinct post-complaint controversy arising from a continuous pattern of administrative racketeering, wire fraud, and state-action data manipulation that was never part of the state court record under Docket Number ESX-L-006762-23, Appellate Docket A-2380-23, or Supreme Court Track 091078. While those prior filings tangentially related to the structural property loss stemming from an August 2, 2020 residential fire, the transactional injuries set forth in this Complaint constitute entirely separate, independent causes of action.

This matter cannot be barred by *Res Judicata* for three absolute legal reasons: first, this action targets a completely distinct cluster of 11 new individual and regulatory defendants who were never parties to the prior state proceedings; second, it unmasks a massive, covert regulatory cover-up and data-blackout conspiracy that was actively concealed from me during the state litigation; and third, it addresses ongoing, post-complaint transactional injuries culminating in the active, bad-faith document denials executed by NJDOBI Regulatory Lawyer Zaniya Lewis, as recently as Thursday, August 6, 2026. This Court possesses primary subject-matter jurisdiction because these claims involve a continuous pattern of interstate mail and wire fraud under the Federal Civil RICO Act (18 U.S.C. § 1962) and state-action civil rights deprivations under 42 U.S.C. § 1983 that could not have been raised or adjudicated in the initial limited state court dockets.

## B. THE FOUNDATIONAL FRAUD AND THE UNREDACTED NOVEMBER 2, 2020 INVOICES

The origin of this corporate racketeering enterprise began in the immediate aftermath of the August 2, 2020 fire loss. Although certain initial structural payments were processed, the corporate carrier and its internal handlers deliberately engaged in an adjustment scheme designed to cheat me out of my personal property and contents coverage. The carrier transmitted a series of bulk checks to my home completely separated from any explanatory itemized billing ledgers, leaving me with zero transparency as to how my contents claim was actually being calculated or paid. To obtain clarity, I directly contacted Farmers Insurance Special Investigations Unit (SIU) Director Bobby Dodd. I demanded a formal copy of my file, including the itemized lists and the mandatory recorded statement Dodd promised me. My demand was rooted in my direct historical knowledge of insurance bad faith; I knew that in a previous 2014 claim, Metlfe's former lawyer, Lee Eckell, had colluded with the carrier by failing to provide me with a copy of my own recorded statement. Determined to protect my rights as a self-represented consumer, I refused to proceed blindly. Bobby Dodd explicitly agreed to my terms, promising that if I submitted to a formal contents interview, he would immediately provide me with a complete copy of the recorded statement and the master contents ledger. Based on Bobby Dodd's express contractual promise and inducement, a formal interview was scheduled and executed on December 4, 2020. During that face-to-face meeting, Dodd presented a master corporate document and commanded me to place my physical initials on some of a total of 14 specific pages. Before I placed my initials on those sheets, I looked closely at the master cover page and observed that the total amount was exactly **$100,008.64**. Dodd conducted the recorded interview, questioning me directly from the line items on those pages regarding the values and purchase histories of my personal property. Once the interview concluded and the carrier secured my initials, Bobby Dodd completely violated his promise. He permanently withheld the recorded statement and refused to transmit the master contents document. Instead, he subsequently mailed me a completely altered, heavily redacted version of the November 2, 2020 invoice. This redacted document was stripped of all monetary figures, leaving the itemized lists blank and completely erasing the $100,008.64

total from the cover sheet. By redacting these figures, the corporate enterprise stripped the document of all legal and administrative value, utilizing an interstate wire ruse to secretly implement an unauthorized, unilateral 33% contents depreciation reduction behind my back.

**C. THE FABRICATED "NEGOTIATION" RUSE AND SEAN DRAKE'S RECORDED CONTRADICTIONS**

When I discovered that the master records had been hidden, I contacted Farmers Insurance on January 11, 2021, and spoke directly with an operations supervisor named Sean Drake. This was a highly tense, recorded telephonic conversation. During this call, Supervisor Drake attempted to flip the narrative by aggressively accusing me of calling to initiate a "negotiation settlement" for my contents claim. I immediately stopped him and directly told him he was lying. I explicitly stated that I was not calling to negotiate anything; I was calling to demand the unredacted November 2, 2020, invoice and the December 4, 2020 recorded statement that Bobby Dodd had legally promised me. It is a logical and mathematical absurdity for Sean Drake to claim that I was negotiating a settlement. I could not have possibly negotiated the outcome of a claim calculation when the carrier was actively hiding the figures from me and keeping me completely blind to their internal adjustments. I openly challenged Drake on the record, demanding to know how a negotiation could exist when he knew I had no knowledge of their numbers, and stating clearly that if I were to fabricate figures without seeing the master ledger, it would constitute insurance fraud. Caught in his own corporate trap, Sean Drake backed down and transmitted an electronic message on January 13, 2021, stating that his office would contact me directly to discuss a legitimate resolution. He never contacted me again. Instead, without any further dialogue, warning, or explanation, the corporate enterprise issued a bulk check to my home on February 16, 2021, in the amount of **$31,942.93 for actual cash value**. I immediately rejected and returned this check to MetLife/Farmers. I explicitly notified the company that I would never cash or accept a contents check until they produced the unredacted November 2, 2020, invoice and the recorded statement withheld by Bobby Dodd. In response, the carrier mailed a letter dated January 29, 2021, revealing for the very first time that the massive financial shortfall in the check was due to an aggressive, un-itemized "depreciation" penalty.

Your Honor, the issuance of a check in the specific, un-rounded amount of **$31,942.93** under these circumstances defies both industrial standard and New Jersey law, raising an immediate red flag that strips this transaction of any legal legitimacy. I demand that these defendants answer a fundamental question: what reputable insurance company on earth would unilaterally issue a final loss check to a policyholder while explicitly claiming the claim is actively under investigation by the Special Investigations Unit (SIU), and while simultaneously asserting that a binding 'compromise settlement' was reached over the telephone without ever securing a signed, written release? Under established New Jersey insurance law and standard regulatory frameworks, a valid legal negotiation culminating in a compromise settlement requires mutual assent, a clear meeting of the minds, and the execution of a formal, written release matching the agreed-upon terms. This is particularly true for verbal or telephonic agreements allegedly

executed on January 29, 2021. New Jersey courts view the complete absence of a signed release as prime evidence that no contract was ever finalized. Furthermore, the mathematical absurdity of their claim completely destroys their narrative. A genuine verbal negotiation results in a flat, negotiated lump-sum figure; it does not spontaneously calculate down to the exact odd cent of **$31,942.93** unless it was driven by a rigid, one-sided corporate computer ledger. The inclusion of odd cents and a pre-formatted summary invoice proves that Farmers Insurance calculated this number unilaterally behind my back to enforce their unauthorized 33% depreciation reduction, and then fabricated the phone negotiation story after the fact to block an audit. I proactively raised these exact red flags, mathematical flaws, and statutory contradictions to both the state courts and the NJDOBI. I did the heavy lifting for these agencies, cutting their investigative work short by bringing the carrier's blatant fabrications directly to their attention on a gold platter. Yet, despite holding clear proof of this structural deception, they chose to ignore it. It is a physical impossibility for the independent software system, Enservio, to have continuously generated 'billing mistakes' on the master ledger since November 2, 2020, without Vincent Policano seeing it, and without anyone noticing it when Policano delivered the master copy to Bobby Dodd. The truth is exposed by the precise timing: the moment I sat down with Bobby Dodd on December 4, 2020, and placed my physical initials on some of those 14 corporate pages, their bad-faith SIU investigation proved that I did not commit a single act of fraud. Faced with the reality that they were legally obligated to pay a massive actual cash value **$100,008.64** contents valuation, the enterprise decided that this was simply too much money for a self-represented Black Haitian lady to possess. To avoid paying what was rightfully mine, they manufactured these intentional, fabricated lies to artificially slash my payout.

To lock this racial and financial discrimination into place, a coordinated line of public and private actors, Investigator Keith Romanowski, Supervisor Robert Palentchar, Barbara Curtis, James Heifferon, and lawyer, Lee Eckell, all took turns actively begging, pressuring, and pleading with me to cash that depreciated check. This was not a customer service gesture; it was a calculated, bad-faith trap designed to steal my statutory rights and permanently block me from pursuing legal action or a formal appraisal. This is the absolute definition of criminal intent, civil deception, and corporate audacity, and it provides the absolute basis for the massive punitive damages I am seeking before this federal bench.

Furthermore, Your Honor, the sheer malice of this enterprise is proven by the physical facts of how I maintained my home and the financial transparency I provided to them. Vincent Policano and multiple other Farmers adjusters have been inside my home numerous times, and those co-conspirators who never physically visited have exhaustively reviewed the extensive interior photographs on file. They possess absolute knowledge that my home was kept in a state of absolute, immaculate neatness and contained highly valuable personal property. This is the precise reason they desperately wanted to terminate my status as a policyholder; they were terrified of their true coverage liabilities, even while their formal letters hypocritically thanked me for being a 'valued customer.'

Metlife/Farmers went so far as to completely violate their own statutory and contractual directives. They sent a formal warning notice on August 8, 2020, declaring that if I did not remove 'debris' from my property within 90 days, my policy would be cancelled. When I received this warning, I immediately contacted them on August 19, 2020, to inform them that the only material on the property lines was the immediate structural debris resulting from the August 2, 2020, fire loss which the carrier itself had explicitly ordered its remediation contractor, Westfair, to come and remove. Aside from that fire damage, my property had absolutely no debris, no hazards, and no clutter. Yet, during a recorded telephone conversation on August 19, 2020, a corporate handler named Deborah Syse abruptly informed me that my policy was already non-renewed and cancelled because of filing too many claims. They completely refused to respect their own written 90-day warning window, executing an immediate, bad-faith data blackout. I transmitted date-stamped photographs via electronic mail that very day to expose their lies, and upon reviewing them, Mrs. Syse explicitly admitted to me on the recorded tape that I had a beautiful home. To execute this calculated pattern of financial discrimination, the corporate defendants deliberately chose to target an IMPERFECT self-represented Black Haitian lady under the false assumption that I lacked the assets to fight them. My family is not poor, and the defendants possessed direct, tangible proof of our financial standing all along. I explicitly presented official documentation from the administrator in charge of my family's ancestral assets in Haiti. Furthermore, during our face-to-face meeting on December 4, 2020, I openly showed Bobby Dodd my private bank statements and real estate asset deeds. When Dodd initially requested a standard telephonic interview, I flatly refused to handle such sensitive matters over the phone; I explicitly demanded that he come to my property in person so I could physically put these confidential, private asset documents directly into his hands. Because this transaction occurred during the height of the COVID-19 pandemic, our formal interview was executed on my front porch. To completely destroy any fraudulent claims of property debris, I deliberately opened my front door wide so Bobby Dodd could see directly into my home, exposing the absolute, immaculate neatness of my interior layout. I physically showed him my expensive personal property items and told him their exact retail purchase prices, forcing Dodd to openly admit that my home was completely immaculate. They knew exactly who I was, they knew my family possessed significant independent wealth, and they manufactured these fraudulent debris narratives for the sole purpose of breaking my policy contract and slashing my lawful contents payout.

**D. THE CAPTURED NJDOBI REGISTRY AND THE INVESTIGATIVE RUNAROUND**

Confronted with systemic corporate fraud, I filed a formal administrative complaint with the New Jersey Department of Banking and Insurance (NJDOBI) on February 16, 2021, seeking an immediate state regulatory audit into the carrier's billing manipulation. The NJDOBI opened a case file and assigned it to Investigator Keith Romanowski, who sent me an initial entrance letter. Following that initial letter, Investigator Romanowski completely vanished; he refused to return my calls, refused to interview me, and completely refused to demand that Farmers

Insurance produce the unredacted November 2, 2020, invoice or the December 4, 2020, recorded statement. After two months of absolute silence, I finally forced contact with Investigator Romanowski on April 10, 2021. Two days later, on April 12, 2021, Romanowski abruptly issued a final letter flatly closing the state regulatory file, rubber-stamping the carrier's actions by claiming without any evidence that the claim had been "processed correctly." He told me that all internal files transmitted by Farmers were the exclusive, private property of the insurance company and must be kept strictly confidential from me. Crucially, Investigator Romanowski's April 12 closing letter contained absolutely no mention of a "negotiation" or a settlement agreement. He completely hid that narrative because he knew no negotiation had ever occurred, choosing instead to close his eyes and rush the file shut to insulate the carrier from administrative sanctions. Furious at this regulatory betrayal, I bypassed Romanowski and directly contacted NJDOBI Commissioner Marlene Caride. To contain the exposure of her department's bias, Commissioner Caride immediately transferred the case to Supervisor Robert Palentchar. On April 13, 2021, the very day after Romanowski closed the file, Supervisor Palentchar called me on the telephone, actively begging and pleading with me to cash the returned $31,942.93 check. Based on his urgent administrative assurances, I finally agreed to accept a reissued check. However, the moment the enterprise secured my words thatI shall accept a reissued check on the check, Supervisor Palentchar completely stabbed me in the back. He transmitted an electronic mail message to me asserting that the check was not a standard claim payment, but was instead the direct result of a binding "compromise settlement" that I had supposedly negotiated directly with Sean Drake via phone. I immediately shot back an email stating that I had only spoken to Sean Drake a single time in my entire life on January 11, 2021, and that the recorded tape of that call proved I completely rejected any talk of a negotiation. Supervisor Palentchar then shifted his language in subsequent messages, changing the date to an "alleged" conversation on or about a certain timeline. I directly confronted him, demanding to know how a state supervisor could label a transaction as "alleged" when his entire justification for denying me regulatory relief was based on the claim that Farmers possessed tangible, ironclad evidence of a finalized settlement. Palentchar completely refused to answer my questions. He locked down the file, claiming that the company's internal notes were strictly confidential. Palentchar asked me to pursue appraisal. I told him how he can have tangible evidence that I negotiated a settlement with Sean Drake on 1/29/2021, and I have this option to pursue appraisal. He never answered me. I said I should be bound by the contract. To keep the cover-up moving and insulate his desk from exposure, Supervisor Palentchar and Commissioner Caride then executed a bad-faith administrative runaround, transferring my file to a third investigator, Robert Johnson, in May 2021. Investigator Johnson spent five consecutive months, from May 2021 through September 2021, running a dilatory ruse. He repeatedly told me to contact him via phone or compel the production of the invoices, and explicitly told me that my only options were to pursue a private insurance appraisal or initiate an independent lawsuit. This runaround completely exposed their fraud: if the NJDOBI and Farmers truly possessed actual, legal evidence that I had already signed away my rights in a binding "compromise settlement," I would legally have zero right to pursue an

appraisal or file a lawsuit. Commissioner Caride consciously deployed three separate investigators over a three week period for the sole purpose of generating an administrative smoke screen, shielding her subordinates from answering for their lies while protecting the corporate carrier from an honest statutory audit. Your Honor, I have been forced to single-handedly draft and file numerous voluminous legal papers across multiple dockets to defend my home and my life against this corporate enterprise. I ask this Court a fundamental question: if the statements I have typed onto these records are untrue, how is it possible that not one single defendant has ever formally accused me of lying, filed a perjury charge, or initiated a defamation counterclaim against me? These defendants possess absolute control over every single recorded telephone call and every electronic mail transmission I have ever sent them over the last five years. They cannot claim that their silence is out of professional respect or courtesy toward me, because their entire defense strategy relies on indirectly accusing me of insurance fraud, a major criminal offense. The physical evidence conclusively answers this question: they remain completely silent and refuse to deny my accusations under oath because they know I hold the physical proof. The redacted November 2, 2020, invoices show with absolute certainty that Jennifer Digons and the internal claims handlers actively manipulated the exact same master billing document in two entirely different ways, proving that they are the sole authors of this fraud and cannot deny it before a jury.

## E. JENNIFER DIGONS AND THE CONCEALED JANUARY 20, 2021 METADATA

The fraudulent origin of the NJDOBI's "negotiation" narrative remained completely hidden from me until November 2023, when David Blake filed a massive cross-motion in my state court action. Sealed inside the exhibits of Blake's own legal papers, I discovered the true mastermind behind the manufactured record: Farmers Senior Technical Claim Coordinator, Jennifer Digons. The physical records expose that from March 8, 2021, through May 2021, Jennifer Digons was engaged in an active, back-office conspiracy with NJDOBI Investigator Keith Romanowski and Supervisor Robert Palentchar. Digons fabricated a series of false internal claim notes and log entries, painting an innocent, disabled homeowner as a criminal extortionist who was attempting to extract double payments from the carrier. She falsely told the state regulators that the contents claim was actively being investigated and negotiated through March 2021, when in truth, her own engineering data and internal server metadata prove that her structural evaluation report was fully finalized, locked, and permanently sealed as early as **January 29, 2021**. Furthermore, the unmasked logs prove that Supervisor Palentchar was actively coaching Jennifer Digons behind the scenes. Palentchar explicitly instructed Digons how to write the carrier's formal letters to my home to ensure that the checks were transmitted without any mention of a negotiation, while simultaneously instructing Digons to keep the unredacted November 2, 2020, invoices and the internal "negotiation notes" completely confidential from me. To lock this fraud into place, Jennifer Digons crudely fabricated and forged my physical signature onto a fraudulent release form to prove to the regulators that I had signed away my claims. When Investigator Romanowski claimed that these papers were the private property of the carrier, he was actively

helping them hide a forgery. If my signature is stamped on those papers, they are legally my property, and hiding them to protect a corporate forgery is an absolute act of state-action racketeering.

Your Honor, the record exposes a stunning legal contradiction that completely unmasks this conspiracy: how is it possible that David Blake could openly submit numerous pages of raw, back-office communications between Jennifer Digons and the NJDOBI co-defendants, yet every single named defendant simultaneously claims they cannot produce the secret internal 'negotiation notes' that Digons allegedly submitted? From a strict legal standpoint, it is infinitely more relevant and mandatory for the carrier to produce my own recorded audio conversations and the physical release form to verify that my signature was not crudely forged. I did not need or request to see the internal lies that Jennifer Digons fed to the state regulators; I demanded to see the specific records that I am personally involved with.

Even NJDOBI Regulatory Counsel Zaniya Lewis is completely wrong and acting in bad faith by withholding these files under a false shield of confidentiality. The utter hypocrisy of their 'privacy' argument is proven by the fact that David Blake openly included highly personal, confidential records from entirely unrelated Farmers policyholders inside his 487-page cross-motion, exposing documents where other consumers called Farmers employees 'thieves' over a tiny $265.00 dispute and labeled them as liars. If the defendants can freely publish the private data of random citizens on a public court docket, their sudden claim that my own contents ledger is 'confidential' is a complete administrative sham.

The physical timeline itself provides the absolute motive for this cover-up: Jennifer Digons and Farmers fabricated these negotiation notes for the sole purpose of dodging severe state regulatory sanctions for their premium fraud. The carrier's own internal documents destroyed their timeline: they generated a written summary claim report on January 28, 2021; they finalized the entire Special Investigations Unit (SIU) investigation on January 29, 2021; and they immediately issued a bulk check and a formal letter on that exact same day, January 29, 2021. Crucially, that January 29 letter contained absolutely zero mention of a negotiation or a settlement agreement, explicitly stating instead that the financial shortfall was based entirely on a standard depreciation penalty. It is a logical and physical impossibility for an SIU file to be closed and a final check to be processed instantly on the exact same day based on a 'compromise settlement' that was never discussed. Furthermore, any ordinary individual knows that a genuine, lump-sum negotiation settlement is always rounded to a flat number, it never concludes with odd cents like their manufactured check for **$31,942.93**. I repeatedly raised every single one of these mathematical flaws and timing contradictions directly with Commissioner Marlene Caride, Supervisor Robert Palentchar, and Investigator Robert Johnson; they completely refused to care or execute an audit because they were actively protecting a corporate forgery.

## F. THE JUDICIAL DECEPTION, EXHIBIT MANIPULATION, AND THE SUPREME COURT SMOKE SCREEN

When I initiated legal action in state court to challenge this fraud, the defense attorneys at Marshall Dennehey, P.C., and attorney David Blake escalated the conspiracy into absolute fraud on the court. During the November 2023 motion track, David Blake compiled a massive, 487-page cross-motion document. He transmitted the full 487-page version directly to my home address, but when he filed the paperwork with the lower court judge, he surreptitiously extracted and withheld over 340 pages, presenting only 144 pages to the court clerk. Blake executed this dirty exhibit manipulation because he realized that "Exhibit B" inside the 487-page version contained the raw, unredacted email strings between the NJDOBI clerks and Farmers Insurance, exposing the illegal back-office coaching and the manufactured notes. To cover Blake's tracks on appeal, Walter Kawalec executed a secondary record ruse. Kawalec transmitted a copy of a motion to vacate default to my home totaling 70 pages, but explicitly wrote on the legal cover sheet that it was the "cross-motion to dismiss," attempting to deceive a self-represented litigant into believing the entire record had been properly preserved. To cement his bad-faith distortion of the record, Walter Kawalec boldly asserted to the appellate panel that my failure to receive the full 487-page cross-motion document did not affect the ultimate outcome of the case. I immediately shot down his deceptive argument, replying directly that I am not the judicial arbiter who decides the outcome of a case, the trial judge is. Because David Blake actively withheld those 343 missing pages from the court registry, the judge was forced to rule completely blind without ever having the true corporate-regulatory record in the physical file. The absolute materiality of this hidden evidence is proven by the fact that I explicitly referred to the back-office communications inside 'Exhibit B' during three entirely separate state court hearings, desperately trying to bring the fraud to light while the defense team actively suppressed the pages from the bench to secure a blind, fraudulent dismissal Furthermore, Walter Kawalec filed a pre-emptive motion to dismiss with the New Jersey Supreme Court before I could even formally file my petition for review. Kawalec ran straight to the Supreme Court bench because he knew that under the court routing rules, a self-represented litigant is not permitted to file a regular answer to a pre-emptive motion, forcing the Supreme Court justices to review his manufactured, one-sided narrative first and secure a dismissal before my structural evidence could ever be seen on the merits. Throughout this entire timeline, the defendants successfully ignored valid subpoenas signed by the lower court judges demanding the production of the unredacted November 2, 2020, invoices, the fake altered motes because they knew the state courts would completely refuse to enforce their own orders against a powerful defense firm and a state regulatory agency.

**G. THE RECENT AUGUST 6, 2026 DEPRIVATION BY REGULATORY COUNSEL ZANIYA LEWIS**

The continuous pattern of evidence suppression and wire fraud underlying this racketeering enterprise has never stopped, breaking out into a brand-new transactional injury as recently as last week. In an immediate response to the unconstitutional public building lockouts and police checkpoint blockades executed against my person by the township, I filed an emergency

administrative disclosure petition and Open Public Records Act (OPRA) demand with the NJDOBI to compel the immediate production of the historical logs and unredacted invoices to present to the Mayor and Council.

On Thursday, August 6, 2026, at 11:29 AM, NJDOBI Regulatory Counsel Zaniya Lewis, Esq., transmitting an electronic wire communication from oprarecords@dobi.nj.gov directly to my email address jeremie1967@yahoo.com, executed an absolute administrative blackout. Attorney Lewis explicitly denied my request and closed the file, writing:

> *"Dear Kerline Jean-Francois, The New Jersey Department of Banking and Insurance is in receipt of your OPRA request. Please be advised that the documents you seek are part of an investigative file in a completed investigation in which no formal disciplinary action was taken, and thus are not public records and are not disclosable under OPRA. N.J.A.C. 11:17-2.16(b)(6). This OPRA Request is denied and closed. Thank you, Zaniya Lewis, Esq."*

This August 6, 2026 denial by Attorney Lewis represents a completely fresh, independent act of administrative fraud and a separate post-complaint conspiracy. By utilizing a narrow regulatory code (N.J.A.C. 11:17-2.16) to permanently lock away the unredacted November 2, 2020, invoices, Lewis actively stepped into the active Civil RICO enterprise under color of law. She consciously deployed the state's legal authority to shield Supervisor Palentchar's fabricated "negotiation" logs, block an honest regulatory disclosure, and prevent a self-represented consumer from obtaining the ironclad evidence needed to expose their fraud to the judiciary. Your Honor, this entire scheme is so deeply orchestrated between Farmers Insurance, Marshall Dennehey, and the NJDOBI that nothing outside of federal court intervention can stop them. They have spent five years passing my file between three investigators, forging my signature, manipulating court exhibits, and weaponizing administrative denials solely because they are terrified of what is inside those unredacted pages. I have openly told the state court, and I declare directly to your Honor: I am fully ready to walk into a prison cell today if they can produce those internal negotiation notes and prove they are authentic. I will gladly pay every single penny of their legal fees the moment they show a judge a real, un-forged signature or a single unredacted record of a settlement. They refuse to do so because they know no negotiation ever existed. I respectfully implore this Court not to be shocked by the massive scale of the punitive damages I am demanding; when your Honor reviews this unvarnished record of corporate corruption and state-action malice, it will be clear that these numbers are the only mechanism powerful enough to force these defendants to face accountability under oath.

## NON-PARTY CIVIL CO-CONSPIRATORS (INVOLVED IN THE 1021-23 TRACK)

To fully demonstrate the complete breadth of this corporate racketeering enterprise to the federal judge, I explicitly document the specific actions of these additional five actors. While these individuals are already named as primary targets in my concurrent legal tracking files, their

coordinated participation provides the essential bridge that links the corporate billing fraud directly to the state regulatory cover-up:

- **Sean Drake (*Farmers Insurance Operations Supervisor*):** Acted as the primary corporate handler who attempted to manufacture the fraudulent "compromise settlement" defense out of thin air. During a highly tense, recorded phone conversation on January 11, 2021, he aggressively accused me of calling to initiate a claim negotiation, directly contradicting the reality that I was strictly calling to demand the unredacted invoices and recorded statements Bobby Dodd had withheld from me. After I caught him in his lie on the recorded tape, he falsely promised in a January 13, 2021, message to contact me for a legitimate resolution, but instead cut off communication entirely to let the carrier issue a unilateral, depreciated bulk check for actual cash value $31,942.93 on January 29.2021.
- **Barbara Curtis (Claims Customer Relations Consultant):** Acted as a central back-office operative working hand-in-hand with state regulators to force my capitulation. On December 3, 2021, she directly contacted me and aggressively pressured me to accept the insurance check, flatly telling me that the New Jersey Department of Banking and Insurance (NJDOBI) is not my advocate and would not help me. Crucially, during this entire conversation, she completely concealed the existence of a "compromise settlement," never once mentioning that the company had manufactured a fake negotiation story. It was not until David Blake filed his cross-motion that "Exhibit B" exposed her true role, proving that she was actively conspiring behind the scenes with NJDOBI handlers to push the depreciated check onto me while using state administrative channels to bury the carrier's corporate liability. The calculated structural corruption of this enterprise is further exposed by the fraudulent administrative loop the defendants forced me into. When Robert Palentchar flatly refused to take regulatory action, he claimed to me that the NJDOBI does not possess the authority to sanction individual insurance employees, and explicitly directed me to file an internal corporate complaint directly with Farmers Insurance. I followed his directive and filed a formal complaint targeting the fraudulent actions of Vincent Policano and attorney David Blake. However, instead of conducting an honest internal audit, Farmers Insurance placed James Heifferon and the exact same Barbara Curtis in complete charge of investigating my complaint against her own co-conspirators. It is a logical and legal farce to expect Barbara Curtis to find her own legal team and field adjusters liable when 'Exhibit B' proves she was actively working behind the scenes with the NJDOBI to orchestrate the cover-up. To finalize this corporate ruse, when Barbara Curtis subsequently mailed her formal resolution letter addressed to me, she completely scrubbed the text of any mention of my actual accusations, completely refusing to discuss or address a single detail regarding Policano and Blake's fraud to ensure their paper trail remained hidden.
- **James Heifferon (*Field Claim Manager*):** Appointed by the corporate enterprise to pretend to investigate the fraudulent actions of Sean Drake and Vincent Policano, the primary targets in my concurrent active litigation tracks. James Heifferon is the single

MetLife/Farmers employee who explicitly committed corporate wire fraud by writing a false claim summary on January 29, 2021, asserting that a binding "negotiation settlement" had occurred, a claim he completely failed to prove or document. Heifferon then lied to me by claiming that the reissued contents check was merely a standard "offer," actively begging me to accept it during our telephone conversation on December 3, 2021. In a desperate attempt to force my capitulation, he pressured me to move quickly, stating that my time to cash the check would expire soon. I immediately exposed his administrative ignorance, informing him that the legal timeline to cash any loss payment under my policy had already expired on August 1, 2021, and our conversation was occurring months later on December 3, 2021. Heifferon then shifted his tactics and asked me to submit a fresh settlement offer; when I responded with an offer of 75% just to secure closure for my home, he mockingly laughed at me over the phone. Your Honor, this gross, bad-faith humiliation is the exact reason Farmers Insurance and the NJDOBI are terrified to produce the recorded telephone tapes; these audio files would instantly expose how Sean Drake and James Heifferon tag-teamed to mock, threaten, and humiliate a disabled consumer. Following these abusive interactions, MetLife/Farmers and its internal staff completely lawyered up to hide their tracks, and their extreme malice justifies a massive punitive award that breaks this corporate racketeering model forever.

- **Lee Eckell (*Former Private Attorney*):** Your Honor, the deep historical collusion between these private attorneys and the corporate enterprise is conclusively proven by the bad-faith actions of Lee Eckell. I explicitly demanded that Lee Eckell recuse himself from my file on the very first day he transmitted his formal legal entrance letter to my home, yet he completely refused to step down. Eckell boasted to me that he was fully familiar with the case, which means he possessed direct knowledge of the carrier's internal notes claiming a so-called negotiation had occurred on January 29, 2021. Despite seeing those notes, Eckell continually pressured me to produce additional itemized lists and submit a fresh financial offer. I openly reminded Eckell of his own ruthless litigation history against me: back in 2014, he aggressively dragged me into court over a mere dispute for **$6,266.54, ESX-L-002325-14,** after I rescinded an agreement. It is a logical and legal certainty that if the carrier's 2021 negotiation notes were actually authentic, a predatory attorney like Lee Eckell would never give a self-represented consumer a free chance to add more items; he would have instantly used those notes to drag me into court and legally lock down the remaining $79,426.71 replacement cost value contents claim balance. I directly asked Eckell how a negotiation could exist while his corporate clients simultaneously claimed that a heavy depreciation penalty was being applied because I did not possess physical receipts. He completely went silent and refused to answer me. I repeatedly asked him to state under his professional oath whether I had ever negotiated a settlement with MetLife/Farmers, and he never answered. The absolute fraudulence of this negotiation narrative was blown wide open during a formal court hearing on December 15, 2023, when Eckell's own law firm representative, Quinn McCusker,

openly admitted to the judge that there was merely an 'alleged' negotiation on the record, but explicitly verified that his own client was never a part of it. I immediately shot back on the court record, declaring that no negotiation had ever taken place in reality. Just like James Heifferon before him, Lee Eckell demanded that I name a settlement number; when I again offered 75% just to secure closure, they permanently cut off communication, refusing to answer or issue a single counteroffer. Lee Eckell acted with pure, synchronized malice, choosing to insert himself into this dispute exactly one full year after their fabricated negotiation date solely to protect the corporate cover-up.

**Vincent Policano (*Farmers Field Claims Adjuster / Property Inspector*):** Executed a calculated, bad-faith property evaluation scheme to intentionally lock me into a structural trap. During his field inspection on August 4, 2020, the Westfair remediation manager explicitly directed me to throw out all personal property because everything was completely totaled by the fire, a total loss that Policano personally observed but intentionally hid from his supervisors. Policano was intimately familiar with my home, having conducted at least 4 separate, exhaustive walk-through inspections where he took extensive physical photographs inside my closets, my refrigerator, and my basement. The corporate enterprise possesses these exact photographs on file, proving they held direct knowledge that my home was kept in absolute, immaculate neatness prior to the fire. Policano explicitly observed that 90% of the contents burned were brand-new items, yet he willfully set up an administrative ruse by writing a direct message instructing me to write and submit my personal property loss list in a simplified "bulk format."Immediately after securing my bulk list, Policano acted in extreme bad faith by completely concealing his own instructions from his team. When Sean Drake called me on January 11, 2021, Drake became incredibly nasty, hostile, and rude, aggressively demanding to know why I had compiled my personal property lists in bulk. I immediately stopped Drake and explicitly proved to him on the record that Policano had ordered me to do so, providing the direct electronic proof. Policano completely hid his directive from Drake, and Jennifer Digons subsequently weaponized this exact bulk list format in her formal letters to the NJDOBI as their fraudulent excuse to apply the 33% depreciation penalty.The physical record binds Policano directly to the document manipulation: his personal signature is stamped directly on the original November 2, 2020 invoices, and he possesses absolute personal knowledge that the master contents invoice was completely unredacted when Bobby Dodd forced me to initial its 14 pages on December 4, 2020. Policano is the specific corporate liar who falsely told the NJDOBI that the independent software company, Enservio, had made an administrative mistake on the ledger to cover up their deliberate redactions. Furthermore, Policano is the exact individual who secretly drafted the manufactured summary invoice dated January 28, 2021, a full day before their fabricated negotiation date conclusively proving he knew no negotiation had ever occurred. To insulate his actions from scrutiny, Policano routinely included standardized boilerplate language in all his check correspondence thanking me for being a "valued

customer," while simultaneously executing their plot to publicly humiliate me and terminate my 29 year policy registry. To finalize this state-action collusion, Policano personally authored a formal letter to my home on April 16, 2021, explicitly stating, "as per Palentchar," wherein he textually cited the exact, scripted words that Robert Palentchar had secretly instructed Jennifer Digons to write to me, providing the ultimate paper trail of their back-office conspiracy, as per Blake's November 2023 crossmotion.

**THE DISCOVERY FRAUD TRACK KNOWLEDGE ACCRUAL**

The absolute, unvarnished truth is that every single one of the 17 individuals I have named—including all 12 primary defendants and the 5 non-party civil co-conspirators—possesses actual, direct knowledge that no claim negotiation ever took place, that no audio records of such an event exist, and that the internal corporate notes on the record are complete fabrications. For a grueling period of eight consecutive months, I repeatedly asked my former attorney, Lee Eckell, to state directly under his professional obligation whether I had ever negotiated a settlement; despite boasting that he was fully familiar with the case, Eckell permanently went silent and refused to answer my questions. Instead, even after seeing the carrier's fraudulent notes claiming a settlement already existed, Eckell completely exposed the lie by continuing to ask me for additional itemized lists and a fresh settlement offer. No competent attorney on earth would request additional items and new financial offers if they truly held a legally binding release and an active contract signed by their client.

This systemic cover-up extends seamlessly to the defense attorneys, David Blake and Walter Kawalec, who have meticulously avoided mentioning this supposed "negotiation" or producing any audio recordings of it in their formal papers or during open court arguments; they deliberately shift their language to discuss cold "depreciation" because they know the negotiation notes are a complete fiction. Furthermore, every single NJDOBI investigator, including former Commissioner Marlene Caride, held tangible, physical evidence proving the fraud, as they actively received two completely different, crudely altered versions of the November 2, 2020 invoice. They possessed absolute knowledge that the carrier's records were fraudulent, yet they chose to shut their eyes, hide the documents under a seal of confidentiality, and participate in this multi-layered conspiracy to protect the corporate enterprise from federal racketeering liability.

**IDENTIFICATION OF DEFENDANTS BY THE UNLAWFUL ACTS PERFORMED**

1. **Defendant 1: New Jersey Department of Banking and Insurance (NJDOBI)** is a state administrative agency liable under 42 U.S.C. § 1983 and 18 U.S.C. § 1962 for operating as a captured component of a multi-year fraudulent enterprise, systematically permitting

its employees to manipulate consumer database logs, and maintaining an institutional policy of deliberate indifference to protect corporate carriers from statutory penalties.

2. **Defendant 2: Marlene Caride, Esq.**, in her individual capacity and official capacity as former NJDOBI Commissioner, is liable for gross administrative negligence, state-action collusion, and intentional concealment of regulatory records; she sent duplicitous personal email messages wishing me well on July 1, 2021, while simultaneously approving the suppression of my consumer files to shield corporate fraud from judicial exposure.
3. **Defendant 3: Robert Palentchar**, in his individual capacity and official capacity as NJDOBI Investigations Supervisor, is liable for intentional fraud, official misconduct, and racketeering conspiracy; he personally dictated what documentation would be withheld from me, deliberately filtered out my evidence, and used active court litigation as a pretext to lock down public records in his December 23, 2025 electronic mail while falsely wishing me a joyous holiday season to cover up his backdoor legal coordination.
4. **Defendant 4: Keith Romanowski**, in his individual capacity and official capacity as NJDOBI Investigator, is liable for civil conspiracy and bad-faith evidence suppression; he willfully accepted fabricated corporate tracking exhibits, refused to execute a mandatory insurance audit, and blocked an honest investigation into the carrier's unilateral 33% contents depreciation reduction fraud.
5. **Defendant 5: Robert Johnson**, in his individual capacity and official capacity as NJDOBI Investigator #3, is liable for official misconduct and bad-faith record manipulation; he accepted a downgraded transfer of my administrative file from Supervisor Palentchar for the specific purpose of running a dilatory, bad-faith tracking ruse, using his position as a regular investigator to bury the multi-year fraud enterprise.
6. **Defendant 6: Lewis, Esq.**, in his individual capacity and official capacity as NJDOBI Regulatory Counsel, is liable for fraud on the court and conspiracy under color of law; he actively coordinated behind the scenes with private defense lawyers during active litigation, providing administrative advice to hide altered certified mail manifests and protect the carrier from regulatory sanctions.
7. **Defendant 7: Farmers Insurance Carrier** is a private corporate entity liable for breach of contract, common law fraud, and federal civil racketeering under 18 U.S.C. § 1962; the company manufactured a false "debris and hazards" non-renewal profile on September 22, 2023, utilized an industry clearinghouse database to blackball my home, and deployed internal IT handlers to generate backdated certified mail tracking records to deceive the courts.
8. **Defendant 8: Bobby Dodd**, in his individual capacity and official capacity as Farmers Underwriting Director/Internal Operations Specialist, is liable for intentional fraud, corporate conspiracy, and systemic mail and wire fraud; he personally authorized and directed the suppression of the original, unredacted November 2, 2020 billing invoices

and fabricated a false "negotiation settlement" narrative to hide the unauthorized 33% contents depreciation reduction.

9. **Defendant 9: Jennifer Digons**, in her individual capacity and official capacity as Farmers Senior Technical Claim Coordinator/Adjuster, is liable for fraud, civil perjury, and bad-faith claims handling; she falsely characterized an innocent homeowner as a criminal extortionist to the NJDOBI, manufactured backdated claims logs, and falsely claimed property investigations were ongoing when her own engineering metadata proves her structural evaluation report was fully finalized and sealed on January 20, 2021.
10. **Defendant 10: Marshall Dennehey, P.C.** is a private defense firm liable as a civil co-conspirator and state actor under the *Lugar* doctrine; the firm directly integrated its legal operations with corrupt municipal and state regulatory officials to manipulate discovery, bypass court evidence rules, and execute a multi-year courtroom cover-up campaign.
11. **Defendant 11: David Blake, Esq.** is a private defense attorney liable for civil perjury, fraud on the court, and constitutional torts under 42 U.S.C. § 1983; he manufactured the false premium cancellation narrative under oath, presented fabricated certified mail logs from August 2023 before he was even retained on the case, and secretly presented a manufactured township citation letter *ex-parte* to a state judge to secure a dismissal behind my back without notification.
12. **Defendant 12: Walter Kawalec, Esq.** is a private appellate defense attorney liable for fraud on the court, civil perjury, and racketeering conspiracy; he re-published and verified known fabricated certified mail manifests in his court briefs, planted false behavioral narratives to poison the judicial record, and actively coordinated with NJDOBI clerks to intercept and suppress my structural evidence.

**PAGE 4, PART IV: INJURIES**

As a direct, proximate, and foreseeable consequence of the defendants' continuous, intentional, and malicious civil racketeering conspiracy and bad-faith record suppression, I have suffered profound, permanent, and irreversible injuries to my physical, emotional, and psychological health.

Your Honor, I am the first to admit that I am not near being perfect. However, I cannot understand why or how this system has allowed this corruption to continue when I have done everything within my human power to seek an honest resolution. I even proactively tried to make a peace offer to secure closure for my home, despite possessing absolute knowledge that Farmers Insurance and its internal employees submitted completely fraudulent, manipulated papers to the New Jersey Department of Banking and Insurance (NJDOBI). The state regulators know with absolute certainty that these documents are crudely altered, because I have adamantly and continuously denied on the record that any negotiation ever occurred at any time, with anyone. Yet, not one single state investigator had the integrity to confront Farmers or order them to stop, choosing instead to turn a blind eye to intentional corporate fraud. These individuals are all grown adults who hold a high moral and statutory duty to the public through their jobs, and they failed completely to help an honest resident.

The defense lawyers, Lee Eckell, Walter Kawalec, David Blake, Quinn McCusker, Robert Berns, and the leadership at Marshall Dennehey freely took on this case because they operate under the bad-faith assumption that certain corrupt state judges will always have their back. They believe they possess absolute immunity as privileged members of the court, operating hand-in-hand with a corrupt NJDOBI registry that exists solely to protect Farmers Insurance and its employees from accountability. I have shown immense, agonizing patience throughout this nightmare; I waited for two full years, filing this federal action just before the strict two-year anniversary of the exact date I first discovered their hidden fraud, proving that I exhausted every administrative avenue before looking to the federal bench. I did everything in my power to avoid this conflict.

A substantial portion of the total money from the contents insurance claim is explicitly dedicated to go to charity to help those in need. Instead, these defendants have maliciously held this money, money meant for the poor for six long, agonizing years. Because of their greed, I have been forced to deplete my own personal assets and funds to help the poor and physically replace the essential items that were lost in the fire. I transmitted ironclad physical evidence directly to Robert Palentchar, treating our correspondence with the highest level of legal and court-like solemnity. I completely proved my case to the state court and I proved it to the NJDOBI, yet they completely failed me and abandoned their oaths. What an absolute shame!

The defendants' coordinated data blackouts, record fabrications, signature forgeries, and three-investigator administrative runarounds have directly caused a severe and agonizing psychiatric regression of my pre-existing mental health conditions, triggering intense clinical anxiety and deep depression that I had previously managed but which has now violently spiraled into constant, debilitating panic attacks and physical weeping. Furthermore, the extreme pressure of this systemic targeting has inflicted severe, agonizing physical pain upon my body, which has

been profoundly worsened and exacerbated by the grueling, long hours I am forced to sit and spend physically scripting, typing, and putting these massive legal papers together entirely alone to defend my home against their structural fraud. Every single named defendant possessed actual, direct, and written knowledge of my vulnerable mental and physical health conditions all along, fully aware that my deep emotional distress and physical pain are violently triggered every time I am forced to see or interact with them. Your Honor, the psychological impact of this continuous corporate and administrative targeting has left me completely traumatized. I am trapped in a constant state of clinical anxiety, to the point where I am now terrified to open my computer or log into my email, paralyzed by the fear that I will find another hostile notification from the court or a malicious motion from the defense lawyers. I feel this exact same overwhelming dread every single time I walk out to open my physical mailbox. I ask this Court: why should an honest citizen be forced to live in absolute fear? I am not in trouble. I am not in debt. I have always paid every single one of my bills entirely on time. I did nothing wrong. It is these defendants who have broken the law, targeted my home, and inflicted this profound emotional trauma upon me, yet they have weaponized the legal process so aggressively that they have left an innocent consumer living like a fugitive in her own home. I have explicitly explained my severe psychiatric and physical vulnerabilities to them repeatedly, including the fact that I actively receive mandatory medical therapy to manage these conditions. My medical history is strictly confidential and private under federal law, yet I have never hidden my profound suffering from these officials because I desperately needed them to communicate with one another and finally order this targeting to stop.

Your Honor, this Court does not even need to hear testimony from my therapist or my psychologist to comprehend the profound psychological damage these defendants have inflicted upon my life. I am so deeply traumatized that I cannot even own a cellular phone. As an exceptionally smart child growing up, I was severely bullied by other children because of my skin complexion. That childhood trauma has been violently resurrected by these defendants, to the point where whenever I hear a telephone ring, I am instantly seized by overwhelming anxiety and fear, terrified of what new threat is coming. For six consecutive years, I have been forced to completely alone defend myself against a mountain of fabricated corporate lies. The New Jersey Department of Banking and Insurance (NJDOBI) and the state courts completely abandoned their institutional duties and never once protected me, allowing these high-priced defense lawyers to enrich themselves and line their pockets directly off my disability, my pain, and my suffering. These individuals should finally choose to do the right thing; I am certain that they claim to be Christians or members of a religious denomination, yet they have completely abandoned their faith and human decency to target an innocent resident. This multi-year litigation track has stripped me of my absolute freedom; I cannot even travel or leave my home, because I am trapped in a constant state of panic, never knowing when these defense attorneys are going to surreptitiously mail me a fresh motion to dismiss, leaving me with a strict, ticking judicial deadline to respond. They have turned my life into a prison, and I implore this Court to step in and hold them strictly accountable.

My tears are completely real and impossible to contain because I cannot understand why these individuals enjoy inflicting intentional pain upon me; and many people can fully certify to the court that they witnessed only the tears of a deeply hurting resident. This federal lawsuit is not about seeking money, but about stopping the profound, calculated, and intentional pain these defendants have willfully chosen to inflict upon me while knowing the catastrophic impact it has on my life.

**PAGE 4, PART V: RELIEF (TRACK 1021-23 RACKETEERING COMPLAINT)**

I respectfully demand judgment against all named defendants, requesting the following specific monetary, punitive, and equitable relief for this multi-year racketeering and regulatory cover-up conspiracy:

**Joint Corporate and Coordinator Damages:** I demand compensatory and punitive damages, jointly and severally, in the absolute total amount of **$250,000,000.00** directly against corporate Defendant Farmers Insurance Carrier and Defendant Jennifer Digons, Senior Technical Claim Coordinator, to punish them for their extreme malice, bad-faith claims manipulation, intentional fabrication of claim logs, and crude signature forgery to cheat a disabled consumer.

**Joint Defense Counsel and Firm Damages:** I demand punitive damages, jointly and severally, in the total amount of **$25,000,000.00** directly against Defendant Marshall Dennehey, P.C., Defendant David Blake, Esq., and Defendant Walter Kawalec, Esq., to punish them for their coordinated campaign of courtroom fraud, systemic exhibit manipulation, and bad-faith suppression of the raw, back-office communications between the carrier and the state regulators.

**Independent Public Agency Damages:** I demand independent punitive damages in the total amount of **$25,000,000.00** directly against the New Jersey Department of Banking and Insurance (NJDOBI) and its named administrative and legal officials, to hold them strictly accountable for their gross official misconduct, bad-faith suppression of public records, deliberate violation of court orders, and illegal backdoor collusion with a private insurance defense team to shield corporate fraud from judicial oversight.

**Independent Internal Operations Damages:** I demand independent punitive damages in the total amount of **$10,000,000.00** directly against Defendant Bobby Dodd, Underwriting Director, to punish him for his separate, intentional bait-and-switch ruse, fraudulent inducement, and the multi-year withholding of the unredacted master billing invoices.

**Mandatory Federal Injunction For Suppressed Records:** I respectfully demand the immediate issuance of a mandatory federal injunction compelling the New Jersey Department of Banking and Insurance (NJDOBI) and its legal handlers to immediately release and deliver every single internal investigative document, data log, and communication history file concerning my claim specifically including the unredacted corporate negotiation notes and the original unredacted November 2, 2020 invoice displaying the true **$100,008.64** valuation which the NJDOBI bad-faithly refused to produce even when openly confronted with a valid, signed state court order and active judicial subpoenas.

**Award of Pro Se Legal Fees, Costs, and Expenses:** I demand an explicit award covering any and all legal fees, filing fees, copy fees, technological costs, and administrative expenses incurred throughout my multi-year fight to extract these hidden records from these coordinated public and private entities.

**Absolute Challenge and Corporate Striking:** I explicitly challenge these defendants before this Court: if they can produce these internal notes and prove they are authentic, I will immediately surrender myself to walk straight into a prison cell and pay all defense legal fees and damages. If they cannot, all internal corporate or administrative notes asserting the existence of a "compromise settlement" must be declared completely fraudulent, null, void, and permanently struck from all state, federal, and insurance industry clearinghouse registries, and a permanent injunction must issue barring the defendants from ever using these fabricated files against me again.

## CONCLUSION AND PRAYER FOR JUSTICE

Honorable Judge of the United States District Court:

I lay all the unvarnished facts, the *prima facie* evidence, the structural merits, and the plausible standards of this case directly before your Honor. I respectfully implore this Court to understand that I have done absolutely everything within my human power to avoid initiating this federal lawsuit. I never wanted to be in this position. For years, I have actively and relentlessly searched for professional legal representation, and I am still actively looking for an attorney to take this case. Because I am currently forced to stand before this bench completely self-represented, I have had to sit for grueling, endless hours single-handed, scripting and writing numerous long papers solely because I must defend my home and my life against a mountain of continuous corporate lies.

The defendants have weaponized the legal system to inflict intentional physical and emotional trauma upon me. Defense attorneys David Blake and Walter Kawalec keep writing endless, bad-faith motions for the sole purpose of extracting more billable money for their firm while actively running a campaign to break my body and spirit. I explicitly tell this Court: do not be fooled or distracted by the massive scale of the monetary damages I am demanding in this complaint. I have suffered far too much for this to be about money. I do not need or want a single penny of this money if the defendants can simply produce their secret internal negotiation notes to this Court to verify their authenticity. If they can show this Court a single authentic, un-forged record proving a negotiation took place, I will gladly walk away and give up my entire claim. But they cannot. In fact, despite knowing that their notes were complete fabrications, I even swallowed my pride and proactively offered to negotiate with them just to obtain closure and avoid a lawsuit. They rejected my peace offerings because they preferred to inflict intentional pain. If I am awarded these damages, I intend to give a massive portion of this money directly to

charity, because my battle is for truth, dignity, and accountability.

I deserve every single dollar of this monetary relief because the defendants' behavior is an absolute outrage against decency and the law. During the discovery phase of this litigation, I shall formally submit the heavily redacted November 2, 2020, invoice directly to this Court. Your Honor will be able to rely on this physical document to see with your own eyes that the corporate enterprise actively fabricated evidence. The New Jersey Department of Banking and Insurance (NJDOBI) knows with absolute certainty that under federal law, they cannot keep these fraudulent records hidden under a false shield of confidentiality. Discovery will conclusively expose that Farmers Insurance, Jennifer Digons, Vincnet Policano, and Sean Drake actively transmitted two completely different, altered, and conflicting versions of the exact same November 2, 2020, invoice.

There was absolutely no negotiation. The defendants' own written records completely expose their guilt because they actively label their own core accusation against me as an "alleged" settlement. I ask this Court: how can a transaction be labeled as "alleged" by the very corporate enterprise and state agency that claims to hold definitive, tangible proof of its completion? You cannot fabricate a fake story out of thin air and then call it "alleged" to dodge a consumer audit. I do not need a law degree or decades of legal experience to show an ordinary jury of my peers that a billing invoice has been crudely faked and stripped of its numbers. It is now entirely up to these defendants to decide if they want to let me expose their multi-year racketeering scheme in front of a New Jersey jury.

Your Honor is a United States District Court Judge; you are not a subordinate state court judge, and I know you will not hesitate to protect the U.S. Constitution and send this meritorious case straight to trial. To ensure the integrity of the judicial record, we absolutely need to see the original notes. Because the defendants have already willfully ignored and trampled upon valid subpoenas signed by the state court, I respectfully request that your Honor sign a fresh federal subpoena to forcefully extract these hidden files directly from the desks of the NJDOBI and Farmers Insurance. We require the immediate production of both sets of records for a direct physical comparison, because Farmers Insurance has established a strict, systematic pattern of fabricating two entirely different corporate papers for the exact same subject. I place my ultimate trust in this federal courthouse to enforce its own power, tear down this administrative cover-up, and grant me the justice and relief I am rightfully entitled to receive.

**JURY DEMAND**

The Plaintiff, Marie Jean-Francois, hereby respectfully demand a trial by jury as to all issues, counts, and claims so triable in this action pursuant to **Rule 38(b) of the Federal Rules of Civil Procedure**.